[No. 36817.   Department Two.   May 14, 1964.]

THE STATE OF WASHINGTON, *Respondent,* v. JIM VALJEAN HOFFMAN, *Appellant.*[*]

[*]Reported in 392 P. (2d) 237.

*Merkel & Cook,* by *Farrell E. Cook,* for appellant.

*James Munro* and *Jack A. Richey,* for respondent.

HAMILTON, J.—The defendant, Jim Valjean Hoffman, was charged with the crime of burglary in the second degree. He entered a plea of not guilty, waived his right to jury trial, and was tried and convicted by the court sitting without a jury. Appropriate post-trial motions were made and denied. Defendant was sentenced. He appeals.

Error is assigned to the trial court's denial of defendant's timely motion to suppress (a) evidence obtained by a search conducted at the time of his arrest, and (b) statements made by the defendant subsequent to his arrest.

On May 10, 1962, James Abbott, the manager of the Blue Moon Tavern in Bremerton, Washington, closed the tavern at about 3 a.m. He proceeded to his home where he was joined by Leonard D. Hartshorn preparatory to embarking upon a fishing trip. As the two men drove by the tavern on their way to fish, they noticed that the curtains had been drawn. This aroused Mr. Abbott's suspicions, because the curtains were not drawn when he closed the tavern. The two men turned around and drove back to the tavern. At this time, they observed two men seated in a maroon colored Buick convertible, with a white top, parked beside the tavern and headed in the wrong direction on a one-way street.

Abbott and Hartshorn drove on and shortly contacted Deputy Sheriff Larry Bogert. They advised him of their observations and suspicions. All three returned to the tavern, arriving there about 4 a.m., and discovered the building had been broken and entered and a safe taken.

Deputy Sheriff Bogert recalled he had observed the defendant, whom he knew, driving a maroon colored 1956

Buick convertible, with a white top, bearing Wyoming license plates, in the area at about 3 a.m. He notified his headquarters and other law enforcement agencies of the crime. At about 5 a.m., Deputy Bogert, three other deputy sheriffs, and an officer from the Port Orchard Police Department, rendezvoused at the residence of a Mr. and Mrs. Kennedy where they observed a maroon colored 1956 Buick convertible, with white top and Wyoming license plates, parked beside the house. Deputy Bogert identified it as the vehicle he had observed being driven by the defendant in the general vicinity of the Blue Moon Tavern at 3 a.m.

Two officers approached the house, were met by Mr. Kennedy, told him the reason for their presence, were advised that the defendant and a companion were there and invited to enter the house. The defendant and his companion, Donald McMann, were observed fully clothed asleep in the front room, defendant lying on a couch, and Mr. McMann seated in a chair. Preliminary questioning ensued and the defendant was removed from the house and placed in the back seat of a patrol car. Thereafter, the officers searched the Buick automobile, which belonged to defendant, and found a safe in the trunk, later identified as the safe taken from the Blue Moon Tavern. There is a conflict in the evidence as to whether the search of the automobile was with the defendant's consent. Defendant denies giving consent. Deputy Bogert and another officer testified that defendant gave consent and told them the keys to the trunk of the automobile were in the house. The officers were unable to locate the keys and the safe was removed by raising the rear seat back. The keys were later found under the seat of the patrol car in which defendant had been placed.

After discovery of the safe, the defendant and his companion were taken to the county jail, arriving there about 6 a.m. About 11 a.m., they were transferred and booked into the Bremerton Police Station. At approximately 1:45 p.m., defendant gave a statement admitting his entry of the Blue Moon Tavern and removal of the safe. Thereafter, he conferred with McMann and on May 11th gave a second

statement admitting his participation in the burglary and implicating McMann.

The evidence is conflicting as to whether defendant requested counsel prior to giving the statements. Defendant testified that he did request counsel and was advised such would be obtained for him after he made a statement. The officer taking the two statements testified defendant gave the statements willingly and voluntarily, requesting only that he be permitted to confer with McMann after giving the first statement. The officer denied defendant made any request for counsel.

On May 14th, defendant was formally charged with the offense of burglary in the second degree and arraigned in superior court. He had not theretofore been taken before any other court. Between May 11th and 14th defendant's mother-in-law obtained counsel on his behalf.

Defendant first assigns error to the denial of his motion to suppress the evidence of the safe found in his automobile. He asserts that, under the circumstances revealed by the evidence, his arrest at the Kennedy residence was without reasonable and probable cause and the search incidental thereto was, perforce, illegal, and, further, that the evidence does not support the trial court's finding that he voluntarily consented to a search of his vehicle. Based upon these premises, defendant relies upon the rule that evidence obtained by means of an illegal search and seizure is not admissible in ensuing criminal proceedings. *State v. Miles,* 29 Wn. (2d) 921, 190 P. (2d) 740. Defendant does not dispute the converse of the rule that evidence is admissible when obtained by means of a search and seizure incident to a lawful arrest, or as the result of a search conducted with the voluntary consent of the accused. *State v. Brooks,* 57 Wn. (2d) 422, 357 P. (2d) 735; *State v. Greco,* 52 Wn. (2d) 265, 324 P. (2d) 1086.

We find this assignment of error to be without merit. In *State v. Miles, supra,* we stated (p. 930):

"Burglary is a felony in this state. In felony cases a peace officer may, without a warrant, arrest any person who he believes, and has good and sufficient reason to believe,

has committed, is about to commit, or is in the act of committing a felony. An officer making an arrest without a warrant, on the theory that a crime has been committed, must not only have a real belief of the guilt of the party about to be arrested, but such belief must be based upon probable cause and reasonable grounds. An officer may not arrest simply because he has some fleeting idea or suspicion that the individual has committed a felony. *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841."

■ In the instant case, we are satisfied that the officers, when they took defendant into custody at the Kennedy residence, had substantially more than a "fleeting idea or suspicion" that he had committed the burglary in question. They knew, or had information, that (a) a felony had been committed at the Blue Moon Tavern between 3 and 4 a.m.; (b) a maroon colored Buick convertible with a white top, occupied by two men, was parked beside the tavern at a crucial time; (c) defendant had been observed driving an automobile of like make and description in the general area of the tavern at 3 a.m.; (d) defendant had criminal proclivities (although the officers were not permitted to testify directly as to the information they possessed concerning the defendant, it is implicit from the evidence, as it bore upon issue raised by the motion to suppress, that defendant had a previous criminal record and the officers were aware of and alert to defendant's presence in Kitsap County); and (e) the defendant and a companion were found fully clothed, at 5 a.m., in a residence next to which was parked a vehicle of the kind and color described.

■ Upon the basis of the factors listed, the officers, at the time they took defendant into custody, had reasonable grounds and probable cause to detain him. The search of defendant's automobile in the vicinity of the arrest was incidental to a lawful arrest and valid. *State v. Jackovick,* 56 Wn. (2d) 915, 355 P. (2d) 976.

■ Furthermore, as heretofore indicated, the trial court found, upon conflicting evidence, that the defendant voluntarily consented to the search of his vehicle. Our review of the record satisfies us the evidence supports this finding.

We will not undertake a reevaluation of the credibility of the witnesses testifying. *State v. Reed*, 56 Wn. (2d) 668, 354 P. (2d) 935.

Defendant's second assignment of error relates to the denial of his motion to suppress the two incriminating statements given by him. Essentially, his contentions in support of this assignment of error can be reduced to two: (a) His detention became unlawful when he was not taken forthwith before a magistrate following his arrest; and (b) he was held incommunicado and denied the right to counsel until he had given the statements.

By contention (a) defendant, in effect, again urges upon us the adoption of a rule of exclusion akin to the "McNabb rule"[1] (*McNabb v. United States*, 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608 (1943)). Although we do not and will not abide the practice of holding persons for unreasonable times without charge and arraignment, we have heretofore refrained from adopting the *McNabb* rule of exclusion. Instead, we have relied upon the ultimate test of "voluntariness" in determining admissibility of confessions. *State v. Winters*, 39 Wn. (2d) 545, 236 P. (2d) 1038; *State v. Self*, 59 Wn. (2d) 62, 366 P. (2d) 193, cert. den. 370 U. S. 929, 8 L. Ed. (2d) 508, 82 S. Ct. 1569; *State v. Keating*, 61 Wn. (2d) 452, 378 P. (2d) 703; *State v. Carpenter*, 63 Wn. (2d) 577, 388 P. (2d) 537.

It may well be that future developments, or a conviction that law enforcement agencies of the state are persistently indulging in undue and extensive delays between arrest and arraignment, may dictate a reconsideration of our position. Until that time, however, we adhere to our present approach.

The trial court did not err in denying defendant's motion as it pertained to contention (a).

By contention (b) defendant challenges the voluntari-

---

[1]In federal courts, pursuant to federal procedural rules, confessions made during illegal detention due to failure promptly to take a prisoner before a committing magistrate are excluded, whether or not the confession is the result of coercion. See, also, *Upshaw v. United States*, 335 U. S. 410, 93 L. Ed. 100, 69 S. Ct. 170 (1948).

ness of his confessions. He asserts he was held incommunicado and denied the right to counsel until he had given and signed the statements. In support of this contention, defendant points to *Haynes v. Washington*, 373 U. S. 503, 10 L. Ed. (2d) 513, 83 S. Ct. 1336 (1963), wherein similar assertions were found, as a fact, to be true and to constitute coercion.

In the instant case, the trial court, pursuant to Rule of Pleading, Practice and Procedure 101.20W, RCW Vol. 0, conducted an inquiry into the voluntariness of the challenged statements. The trial court had before it the affidavit and testimony of the defendant and two counter affidavits and the testimony of one of the affiants (the officer who took the statements) offered by the state. From this information and arising out of the conflict occurring therein, the trial court, in essence, found as facts that defendant (a) was not held incommunicado, (b) did not request an attorney, (c) was not required to give the statements as a condition to being allowed to contact an attorney, and (d) was not promised any favors as an inducement to giving the statements. From these findings of fact, the trial court concluded the statements were voluntarily given.

We pause here to point out that, although we will and do attach significant weight to findings of fact upon disputed issues arising under Rule 101.20W, *supra*, we cannot blindly and conclusively accept such as indisputably establishing the pertinent facts. It is our duty and obligation, where basic constitutional rights are involved, to carefully review the record brought before us and determine therefrom whether the bounds of due process requirements have been exceeded. *Haynes v. Washington, supra*; *State v. Rutherford*, 63 Wn. (2d) 949, 389 P. (2d) 895. We are mindful, in this respect, that it is not our function to reevaluate the credibility of the witnesses testifying. *State v. Reed, supra*. Our prime concern is that it be convincingly evident from the record that constitutional privileges have not been abused. Strained findings of fact, predicated upon translucent or sophisticated evidence, cannot stand.

Examination of the instant record in the light of our responsibility satisfies us that the trial court's findings are amply supported by the evidence. It is undisputed that defendant signed the first of two statements within 9 hours of his apprehension, and the second within 36 hours, and after he had been permitted to confer with his companion. He makes no contention that he was abused or threatened in the county or city jail. He admits he was anxious to get his case processed, and while asserting he requested use of the telephone and the assistance of counsel tacitly concedes he knew no one whom he would have contacted. On the other hand, the officers, by way of affidavits and testimony, specifically deny defendant either requested use of the telephone or the assistance of counsel. The gist of the testimony of the officer taking the statements may be gleaned from the following excerpts from his cross-examination:

"Q. Was the defendant informed that he was under arrest at this time and charged with felony? A. At the time I questioned him? Q. Yes. A. Yes, he was informed that he was under arrest. Q. Did you inform him that he had a right to counsel? A. Yes, I did and—Q. And did he ask for counsel? A. No, he didn't. Q. Did he make any request? A. Something to the effect that if he was fool enough to do this, he should be in trouble. Q. Did he make any requests? A. No, he did not. . . . Q. . . . . At the time the defendant was booked into the police station, did any officer undertake to inform him of his rights? A. As far as talking to an attorney, we did talk that over, and he stated that anybody that would be as foolish as he had been in committing this burglary, I don't know his exact words, but that was the way he talked in regard to having an attorney. Q. Didn't he say that he had matters that should be taken care of by an attorney? A. No, he didn't. He said nobody as foolish as he did in this burglary should—I don't remember his exact words but he said that anybody that would be as foolish as he had been in pulling this burglary, or something similar to that. Q. How do you account for the difference in the two statements? And the fact that he was willing to make them? A. The reason for the two statements was he did not want to implicate McMann, the other boy that was with him, and when he then requested that he have the opportunity to talk to this other boy, and

talk it over with him, and this was done, and they were brought together. They brought the other boy up there, put them together and let them talk by themselves, and when they were through they both admitted their part in this burglary, but they didn't want to tell on each other in this burglary."

The trial court did not err in finding and concluding that the confessions were voluntary and admissible in evidence.

The judgment is affirmed.

OTT, C. J., HILL, FINLEY, and WEAVER, JJ., concur.

*Reported in 392 P. (2d) 227.