THE STATE OF WASHINGTON, *Respondent*, v. DEAN ALLEN VANGEN, *Appellant*.*

*John M. Klobucher* (of *Ennis & Klobucher*), for appellant (appointed counsel for appeal).

*Reported in 433 P.2d 691.

*George A. Kain* and *John P. Murray,* for respondent.

HILL, J.—The defendant, Dean Allen Vangen, appeals from a judgment of conviction after a jury verdict of guilty on five counts of first-degree forgery. He contends there was no forgery within the purview of the forgery statutes, RCW 9.44.010, 9.44.020, and 9.44.070;[1] and that his confession should not have been admitted into evidence because it was the fruit of a poisoned tree, *i.e.* an unlawful arrest.

The appellant, accompanied by a companion (Lincoln Brummett), had registered at the Holiday Inn (Spokane), hereafter referred to as Holiday, under the name of Elmer J. Johnson. He gave his address as "5833 Sheridan S., S. Mpls., Minn." (Actual address, as testified to by Mr. Johnson, was 5833 Sheridan Avenue, South, Minneapolis, Minnesota.) The appellant had American Express, carte blanche, and other credit cards belonging to Elmer J. Johnson. During a 3-day sojourn at Holiday, which maintained a restaurant and bar as part of its accommodations, the appellant had signed restaurant and bar sales slips or "res-

---

[1] "Within the provisions of this chapter relating to forgery, a 'written instrument,' or a 'writing,' shall include an instrument partly written and partly printed or wholly printed with a written signature thereto, or any signature or writing purporting to be a signature of or intended to bind an individual, partnership, corporation or association or an officer thereof." RCW 9.44.010

"Every person who, with intent to defraud, shall forge any writing or instrument by which any claim, privilege, right, obligation or authority, or any right or title to property, real or personal, is or purports to be, or upon the happening of some future event may be, evidenced, created, acknowledge [*sic*], transferred, increased, diminished, encumbered, defeated, discharged or affected, . . . . or thing which may be the subject of forgery, shall be guilty of forgery in the first degree, and shall be punished by imprisonment in the state penitentiary for not more than twenty years." RCW 9.44.020

"Whenever the false making or uttering of any instrument of writing is forgery in any degree, every person who, with intent to defraud shall offer, dispose of or put off such an instrument or writing subscribed or endorsed in his own name or that of any other person, whether such signature be genuine or fictitious, under the pretense that such subscription or endorsement is the act of another person of the same name, or that of a person not in existence, shall be forgery in the same degree." RCW 9.44.070

taurant checks" and "bar checks," as Holiday chose to denominate them, as Elmer J. Johnson. Guests at the Holiday, in lieu of paying cash for food and drinks purchased, may sign the restaurant and bar slips or checks and the amount thereof is then placed on the guest's account.

The five counts on which the appellant was convicted were based on three restaurant and two bar checks, and the appellant—conceding that he signed them and that he is not Elmer J. Johnson—urges that such checks do not constitute an instrument that can be made the basis of a forgery charge, *i.e.* that they are not a

> writing or instrument by which any claim, privilege, right, obligation or authority, or any right or title to property, real or personal, is or purports to be, or upon the happening of some future event may be, evidenced, created, acknowledge [*sic*], transferred, increased, diminished, encumbered, defeated, discharged or affected, . . . or thing which may be the subject of forgery, shall be guilty of forgery in the first degree, and shall be punished by imprisonment in the state penitentiary for not more than twenty years. RCW 9.44.020

The same contention has heretofore been made and decisively answered contrary to the position taken by the appellant. See Annotation: "Signing credit charge or sales slip, as forgery." 90 A.L.R.2d 822 (1963).

In *People v. Searcy*, 199 Cal. App. 2d 740, 743, 18 Cal. Rptr. 779 (1962), the court says:

> Signing a credit sales slip constitutes an implied promise to pay for the merchandise described on the slip. The delivery of the merchandise (in this case, the gasoline and tires) is the consideration for the implied promise. Moreover, the stealing of the gasoline or tires would be larceny; hence the false signing of the implied promise to pay therefor is forgery.

The appellant attempts to draw a fine distinction between the restaurant and bar checks involved here, and "charge slips" or "credit slips." The significance of the distinction eludes us. There is, however, such a "guest check" case squarely in point, *People ex rel. Arter v. Foster*, 199 Misc. 900, 104 N.Y.S.2d 39 (1951). It involves a guest at

"Runds Oyster Bar and Grill" who signed such a guest check as "R. Hichoh." In answer to the contention that the so-called "guest check" could not be the subject of a forgery, the court said:

> We cannot agree with this contention. The instrument forged by relator purported to be the act of one, "R. Hichoh" whose name was signed thereto by relator. If the instrument had been genuine, it would have operated to create a liability on the part of Mr. Hichoh to pay the amount of the check and also certainly purports to affect the property rights of the person whose name was forged. This writing alleged in the indictment on which the forgery is predicated would be operative, if genuine, and the facts sufficiently state a crime and the court had jurisdiction to render the judgment. (See *People v. Drayton*, 168 N.Y. 10; *People v. Rising*, 207 N.Y. 195.) (p. 902)

■ The bar and restaurant checks were well within the purview of RCW 9.44.020. Had the signature of Elmer J. Johnson been genuine, or had appellant been authorized to sign it, it would have evidenced an obligation on the part of Mr. Johnson, which he would subsequently have been required to pay. If the instrument itself did not create the obligation, it constituted an acknowledgment of an obligation already created at the time appellant placed his order for the food and beverages.

Another novel, but unconvincing, contention is that if the restaurant and bar checks were promises to pay, they were no more than the promises of the person who signed the slips to pay or make arrangements for their payment at the time he checked out of Holiday; and that, after all, they had never been presented to him for payment, and if they had been, they might have been paid or arrangements made for their payment.

It is urged that the state failed to prove the spurious nature of the instruments inasmuch "as the record is devoid of evidence that they were ever presented to anyone for payment."

This contention must have been made with tongue in cheek in view of the evidence that the appellant and his

companion terminated their residence at Holiday without the formality of checking out, and owing their host almost $200.

When the appellant placed the name of Elmer J. Johnson on the instruments, they became spurious instruments.

It was the notification of the Spokane Police Department by Holiday that appellant and his companion had left without paying their bill which resulted in the unusual situation which gave the appellant the basis for the contention that his confession should not have been admitted into evidence. The information given by Holiday to the police led to a charge on the police records of defrauding an innkeeper.

The officers who made the arrest knew that the amount claimed by Holiday was about $200. They also knew something about the extent of appellant's credit-card binge because his companion, Lincoln Brummett, had been arrested on a forgery charge and had "talked." Indeed, the officers who arrested the appellant secured the information as to where he might be located from Brummett. These officers had knowledge of several felonies for which appellant might have been arrested; however, they erroneously assumed that defrauding an innkeeper of $200 was a felony[2] and advised the appellant that this was the offense for which he was being arrested. They had no warrant for his arrest and, obviously, the misdemeanor for which he was arrested had not been committed in their presence. This circumstance has been "ballooned" into a "false arrest" and a "poisoned tree." It is contended that the confession obtained while appellant was unlawfully in custody can not be utilized against him.

A motion to suppress the credit cards or anything else taken from appellant's possession at the time of his arrest was heard by the trial court pursuant to Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0. This motion was granted. A similar hearing on a motion to

---

[2]RCW 19.48.110 makes defrauding an innkeeper a gross misdemeanor; and RCW 9.45.040 makes the same offense a misdemeanor.

suppress the confession made after the appellant's arrest was also held—it being his contention that the confession was not admissible, being the fruit of a "poisoned tree." This motion was denied by the trial court, and the confession was admitted into evidence.

The appellant's attempt to infer that all the evidence against him was obtained as a result of his arrest without a warrant for defrauding an innkeeper is without foundation.

Holiday had made its initial complaint some 12 hours prior to the arrest of the appellant and had provided the police with his assumed name, Elmer Johnson, and with the name of the home town of Elmer Johnson. Appellant's companion, Lincoln Brummett, was arrested on a charge of forgery some 5 or 6 hours prior to the arrest of the appellant and had given the police information concerning their modus operandi while traveling together for approximately 2 months.

We do not agree that the arrest of the appellant without a warrant for defrauding an innkeeper of approximately $200 constitutes either an illegal arrest or a "poisoned tree," inasmuch as the officers had knowledge, at the time of the arrest of the appellant, of felonies for which he could have been arrested.

But, even if it be assumed that there was a false arrest in this case, it is clear that the confession was not the result of that arrest or of information procured solely therefrom. The appellant—arrested late on October 21, and taken to his cell at 12:05 a.m. on October 22—at all times stoutly maintained that he was Elmer J. Johnson and that the credit cards in his possession were his. He insisted that he was Elmer J. Johnson through a second interrogation on the morning of October 22. Not until after the police had contacted the real Elmer J. Johnson in Minneapolis by telephone would the appellant admit that he was not Elmer J. Johnson, but Dean Allen Vangen. He then gave an entirely voluntary statement to Detective Homer Hall, after being advised of his constitutional rights, including his right to counsel and to remain silent. He expressly agreed

to waive those rights and gave some details of his credit-card travels in rented cars between June 16, 1966, and the time of his arrest. He freely admitted signing the restaurant and bar checks at Holiday, on which the forgery charges were based.

■ In considering whether appellant knowingly and voluntarily waived his constitutional rights to counsel and to remain silent, we may consider that appellant (then 35 years of age) was not unfamiliar with police interrogation, having theretofore been convicted of forgery, auto theft, and non-support of minor children. He had served four or more years in prison. The following observation from *State v. Darst*, 65 Wn.2d 808, 816, 399 P.2d 618 (1965), is applicable here:

> Appellant was no inexperienced youth, unknowing in the ways of the world, nor a stranger to the technique of a police interrogation. His numerous arrests and convictions establish this beyond a doubt. He could not help knowing that he could not be compelled to talk to the officers or that whatever he said or wrote might be used against him at his trial. *State v. Self*, 59 Wn. (2d) 62, 366 P. (2d) 193.

Appellant cites *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 Sup. Ct. 407 (1963), as an authority requiring the suppression of the confession in this case.

We believe that the full thrust of the *Wong Sun* holding was correctly analyzed by the Supreme Court of Errors of Connecticut in *State v. Traub*, 151 Conn. 246, 196 A.2d 755 (1963).

■ The *Traub* case had been originally decided in 1962 (150 Conn. 169, 187 A.2d 230), but the Supreme Court of the United States directed that that case be remanded to the Connecticut court for further consideration in the light of the *Wong Sun* case, *supra*. Briefs were ordered and a full reargument was had. In its opinion, handed down following the reargument, the court said the *Wong Sun* case had added to the pre-existing requirement that a confession be voluntary the necessity of considering whether an illegal detention—during which the confession was made—was an

operative factor in causing or bringing the confession about. It is clear that an illegal detention does not ipso facto make a confession involuntary. As the Connecticut court said,

> Even though a detention is illegal, if the confession is truly voluntary and the causation factor of the illegal detention is so weak, or has been so attenuated, as not to have been an operative factor in causing or bringing about the confession, then the connection between any illegality of detention and the confession may be found so lacking in force or intensity that the confession would not be the fruit of the illegal detention. (p. 250)

We think the foregoing quotation fits the present situation with tailor-like exactness, assuming the detention to have been illegal.

The appellant persisted in his claim that he was Elmer J. Johnson until contacts with the real Elmer J. Johnson in Minneapolis removed his claim to that name, which makes it clear that it was this information—and not his arrest, legal or illegal—that induced the confession. The voluntariness of the confession, considering all circumstances including claimed illegal detention, is clearly established.

Being in agreement with the trial court that restaurant "checks" and bar "checks," which had been signed "Elmer J. Johnson" by the appellant, were forged instruments, and that the appellant's confession was properly admitted into evidence, we hold against the appellant on each of his two assignments of error and affirm the judgment of conviction based on the jury verdict of five counts of first-degree forgery.

FINLEY, C. J., ROSELLINI and HALE, JJ., and LAWLESS, J. Pro Tem., concur.