**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Curtis Henry BURHANNON, Defendant-
Appellant.**

No. 16238.

United States Court of Appeals
Seventh Circuit.

Jan. 11, 1968,

Howard J. Diller, Joseph I. Stone, Stone & Diller, New York City, for appellant.

K. Edwin Applegate, U. S. Atty., Sidney Milun, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

A jury found defendant Burhannon guilty of the unlawful and knowing purchase of heroin in violation of 26 U.S.C. § 4704(a); and of violating 21 U.S.C. § 174 by unlawfully and knowingly concealing heroin he knew had been illegally imported. Sentences of five years and ten years, respectively, on the counts were ordered to be served concurrently. Burhannon has appealed. We reverse.

Burhannon was arrested January 19, 1966, by Indianapolis, Indiana police without a warrant. The arresting officers found heroin on the floor of the taxicab in which he was riding. Burhannon was not arraigned but was taken to the Federal Building and was given $40.00 by federal officers for use in making a narcotics purchase which was to be observed by police, and was released without formal charge or arraignment. Burhannon disappeared and the indictment before us was returned March 18, 1966. He was arrested in New York City about October 6, 1966, and after a hearing was removed to Indiana for trial. He was arraigned November 18, 1966, and pleaded not guilty. His conviction followed on February 7, 1967.

Before trial Burhannon moved, under Rule 41(e), Fed.R.Crim.P., to suppress, as evidence, the heroin seized, without a warrant, by the arresting officers on January 19, 1966. The motion was denied after a hearing.

■ The government had the burden at the hearing of showing probable cause for the warrantless arrest of Burhannon and the seizure of the heroin. The government relied upon the arresting officers' knowledge of Burhannon's previous narcotics conviction, information from an unnamed "reliable informant" in June of 1965, a conversation between Burhannon and the officer witness in the summer of 1965, statements by two named informants prior to and during December, 1965, intermittent surveillance of Burhannon's place of residence from December, 1965, until the January 19, 1966, arrest, and observation of his conduct just before the arrest, to sustain the arrest and seizure.

At the hearing one officer testified that on the date of the arrest he observed Burhannon come down the rear stairs of his residence with one hand in his coat, "glance around" and enter a taxicab. He stated that until that time there was only suspicion that Burhannon possessed narcotics. As Burhannon entered the cab the officers drove to the scene and stopped their car where it would prevent the cab from moving. After the police car was stopped, one of the arresting officers saw Burhannon lean forward in the cab and "make a motion with his hand down toward the floorboard."

■ Testimony of the events up to the point of arrest is the only testimony relevant to determining the validity of the arrest. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. We think the arrest here took place when the police car stopped the taxicab and that what occurred thereafter cannot justify the arrest, if it was unlawful when made. Id. at 103, 80 S.Ct. 168. In *Henry*, a case involving a similar situation, the prosecutor conceded that an arrest was made at the moment the defendant's car was stopped, and the Supreme Court took the same "view on the facts." We take the same view of the facts here.

We conclude that the information available to the police at the time of the arrest was too vague and remote from the date of the arrest to give the police probable cause to believe that Burhannon was in possession of narcotics when

arrested.[1] Information on Burhannon was received from three informers. An unnamed informer who the police stated was reliable told the police in June of 1965 that Burhannon was engaged in the sale of narcotics. Some time later, but prior to December, 1965, a bartender named Boyd "advised" the police that Burhannon was engaged in the sale of narcotics. Also prior to December, 1965, a man named Howard informed the police that he "had heard" Burhannon was in the narcotics business; and during December Howard again went to the police and this time stated that he was sure that Burhannon was responsible for an overdose of narcotics which he stated had been given to his granddaughter.

These statements were all made long before the arrest, and in any case they lack the particularity which might give them significance. They contain no names, no dates of sales, no location of sales, no indication of how or from whom the informant obtained his information, and in short no information which could be independently verified in any reasonable manner. The information given to the police by these informants falls far short of the detailed independently verifiable information given by the trusted informant in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. The information given by informants in this case and the information held not to justify an arrest in Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142 (1964), bear a substantial similarity. See also this court's decisions in United States v. Whitlow, 339 F.2d 975 (7th Cir. 1964), and United States v. Roth, 391 F.2d 507, (11/20/67) (7th

▪▪ While engaged in surveillance of Burhannon's home during December, 1965, and January, 1966, the police observed "known narcotics addicts" in the alley behind the residence. None of these "addicts" was named at the hear-

ing on the motion to suppress and no explanation was made of why the comings and goings of these people did not lead to the arrest of the "addicts" or of Burhannon except for the arresting officer's own statement that he did not believe that he had sufficient information to justify the issuance of a warrant. The statements made by Burhannon to the police during the summer of 1965 are not only remote from the date of the arrest, but are as consistent with innocence as with guilt and were clearly not interpreted by the policemen on the spot as being incriminatory admissions.

▪ Our view of the information possessed by the police before the arrest is the same as that of the officers. They thought that what they knew prior to January 19, 1966, was insufficient for a warrant. We think that what they observed on that date, before the arrest, added nothing material to their knowledge. There was nothing in the totality of the police knowledge, when the arrest was made, to warrant the inference that Burhannon had possession of narcotics. In effect, the police made the arrest despite their conclusion that they knew less than was needed for a warrant. We are of the opinion that reasonably prudent policemen would probably arrive at the same conclusion of the insufficiency of this information and refrain from arresting the suspect. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. What was discovered later did not justify the arrest. Wong Sun v. United States, 371 U.S. 471, 482, 484, 83 S.Ct. 407, 9 L.Ed.2d 441.

▪ We conclude that the arrest without a warrant was unlawful. Therefore the search for and seizure of heroin in this case cannot be justified as incidental to a lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653. The fact that the arrest of Burhannon and seizure of the heroin was made by Indiana policemen does not

---

1. For a discussion of the significance of remoteness of information to the establishment of probable cause, see Rosencranz v. United States, 356 F.2d 310, 315–316 (1st Cir. 1966); Schoeneman v. United States, 115 U.S.App.D.C. 110, 317 F.2d 173, 177 (1963).

justify the admission of the heroin in evidence at the federal trial. The "silver platter" doctrine which may have justified admission is no longer the law. Elkins v. United States, 364 U.S. 206, 208, 80 S.Ct. 1437, 4 L.Ed.2d 1669.

Since we think the apprehension of Burhannon by the police was an arrest, we see no need of discussing the arguments of the government based on the premise that it was not an arrest.

We hold that the warrantless arrest of Burhannon was unlawful, the incidental seizure of the heroin was unlawful, the district court erred in denying the motion to suppress, and the heroin was inadmissible at Burhannon's trial.

■ In addition, "in custody" incriminating statements of Burhannon which were made to the police immediately after the unlawful arrest and to federal agents later were admitted against Burhannon over his objections. They were tainted by the unlawful arrest and therefore should have been excluded. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

We need discuss no other points.

The judgment is reversed and the cause remanded for further proceedings consistent with these holdings.