[No. 43491.   En Banc.   January 6, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN
RAY BYERS, ET AL, *Petitioners*.

*Voris, Lipscomb, Belcher & Swanson,* by *Michael C. Lipscomb* and *John C. Belcher,* for petitioners.

*Jane A. Mason, Prosecuting Attorney,* and *David E. Rhea, Jr., Deputy,* for respondent.

UTTER, J.—John Ray Byers and Kenneth Thurman Mauler were charged with the crime of burglary in the second degree. The case was tried to the court sitting without a jury which found defendants guilty as charged. An appeal to the Court of Appeals, Division One, followed and that court affirmed the convictions by an unpublished opinion. This court granted a petition for review. *State v. Byers,* 84 Wn.2d 1014 (1974). We reverse the convictions.

The facts are essentially undisputed. On April 17, 1972, at approximately 2:54 a.m., a Mr. Ellis, who resides near the Portage on Lummi Shore Road in a somewhat remote area of Whatcom County, Washington, advised the sheriff's

office by telephone that he had just heard a rapping sound and the breaking of glass emanating from an unoccupied house in close proximity to his residence. He asked that the circumstances be investigated. The radio dispatcher in the sheriff's office radioed two deputies then separately patrolling in that area of Whatcom County, advised them of the Ellis report, and dispatched them to the scene. Their respective routes to the scene placed them on Lummi Shore Road traveling south. While so en route and at approximately 3:07 a.m., they testified they were advised that Mr. Ellis had reported that a car had left the scene traveling north on Lummi Shore Road.

At 3:09 a.m., the deputies intercepted and stopped an automobile proceeding north on the roadway approximately 3 miles from the Ellis residence. They requested the driver's license of the driver, defendant Byers, the automobile registration, and inspected the automobile. The car was occupied by the defendants and two young girls, all under the age of 21, except defendant Mauler. There were in plain sight on the front and back seats several bottles of varying kinds of wine and some beer. The vehicle had a loud exhaust and a defective rear license plate light. Upon inquiry, the deputies were advised by defendants that the vehicle had shortly before run out of gas and that defendants had walked to the home of Byers' parents in the Portage for a can of gas.

The officers requested that the occupants of the car accompany them to the area of the Ellis residence. At this point, the trial court found, in a preliminary hearing to suppress evidence, the defendants were under arrest. This arrest was not made because some of the occupants of the car were underage and there was liquor in the car. Neither of the arresting officers ever claimed that they acted on the basis of a suspected violation of the alcoholic beverages control act. Sergeant Franklin stated clearly that he "felt that a burglary had occurred and that possibly one or all of the subjects in the vehicle were involved and that is why I returned them to the scene."

The defendants arrived at the Ellis premises at about 3:17 a.m. Mr. Ellis identified the noisy exhaust on defendants' vehicle as the type of exhaust he had heard and recalled that the rear license plate light was not functioning. Inspection of the unoccupied residence revealed pry marks on a back door, a broken window upon which there was some blood, and an open kitchen cabinet. Visual observation indicated defendant Byers had a fresh cut on his hand. Defendants were then placed under formal arrest and advised of their constitutional rights, understanding of which they acknowledged.

At 4:22 a.m., a detective from the sheriff's office arrived and was briefed on the situation. Further examination of the automobile revealed a small shank screwdriver on the dashboard which had some blood on it and matched the pry marks on the rear door of the unoccupied residence. Defendants' vehicle was then impounded and the wine, beer, and screwdriver were secured as evidence. Thereafter, defendants were transported to the county jail and booked. They were again read their constitutional rights and signed a waiver of those rights. They each acknowledged a full understanding of their rights. Upon interrogation, each confessed to the burglary and signed a written version of their respective confessions.

Before trial, defendants moved to suppress the confessions and the physical evidence contending that all were the result of an illegal arrest. Upon conclusion of the motion to suppress hearing, the trial court determined that while the officers had probable cause to stop defendants' vehicle on Lummi Shore Road, they did not then have probable cause to arrest and that the physical evidence thereafter acquired was the fruit of an unlawful arrest and inadmissible. The trial court further determined, however, that the confessions were freely and voluntarily given, and otherwise untainted by an illegal arrest, hence, admissible. On review, defendants contend the trial court erred with respect to the admissibility of the confessions asserting that they, too, were the fruit of the unlawful arrest.

The court that tried appellants found, as a matter of fact, that they "were arrested on Lummi Shore Drive . . ." This finding, drawn from an assessment of live testimony we have not heard and undisputed by the parties at all stages of this litigation, is based on substantial evidence. *Boise Cascade Corp. v. Pierce County,* 84 Wn.2d 667, 529 P.2d 9 (1974); *State v. Smith,* 84 Wn.2d 498, 527 P.2d 674 (1974); *State v. Chapman,* 84 Wn.2d 373, 526 P.2d 64 (1974); *House v. Erwin,* 83 Wn.2d 898, 524 P.2d 911 (1974). Sergeant Franklin, the arresting officer who testified on the subject of the arrest, acknowledged that he "told" the defendants to come with him to the scene of the suspected burglary. He said that "[t]hey were brought back," that he "returned them to the scene." When pressed by defense counsel for more detail, he said:

Q. Now, at the time you stopped Mr. Byers, he was not free to say, "Thank you, Sergeant Franklin" and leave, was he? A. No. Q. He was under arrest at that time? A. Yes.

■ Appellants' status was not altered by the fact that they did not test the officers' resolve by attempting to escape and being subdued.

A person is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used.

*Kilcup v. McManus,* 64 Wn.2d 771, 777, 394 P.2d 375 (1964). Nor does the fact that appellants were not formally "advised" that they were under arrest change what their circumstance was and what they knew it to be. *Henry v. United States,* 361 U.S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168 (1959); *United States v. Strickler,* 490 F.2d 378 (9th Cir. 1974); *Jackson v. United States,* 408 F.2d 1165, 1169 (8th Cir. 1969); *State v. Sullivan,* 65 Wn.2d 47, 395 P.2d 745 (1964); *Seattle v. Sage,* 11 Wn. App. 481, 523 P.2d 942 (1974). Even if it were shown that Sergeant Franklin's

6

statements to appellants were couched in terms amounting to a "request," the coercion implicit in the situation appellants confronted would compel us to hold they were arrested. *See United States v. Guana–Sanchez,* 484 F.2d 590 (7th Cir. 1973)(defendant "invited" to follow officers' car in his); *United States v. Jones,* 352 F. Supp. 369 (S.D. Ga. 1972), *aff'd,* 481 F.2d 1402 (5th Cir. 1973)(defendant "asked" to get in police car); *Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63 (1974)(defendant "asked" to go to police headquarters).

Appellants were under arrest from the moment they were not, and knew they were not, free to go. *United States v. See,* 505 F.2d 845, 855 (9th Cir. 1974). "When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete." *Henry v. United States, supra* at 103. When they went further and forced the defendants and their companions to drive 3 miles and wait there while the reported incident was investigated, the fact of arrest was placed beyond question. *United States v. Selby,* 407 F.2d 241 (9th Cir. 1969); *cf. Plazola v. United States,* 291 F.2d 56, 60 (9th Cir. 1961):

> [T]here can be no doubt that when a car is stopped, the occupant required to get out, then required to leave his vehicle to get into an officer's car and be transported to another spot located two miles away . . . being required to await a search of another's vehicle . . . his liberty of movement has been sufficiently restricted to constitute an arrest.

The trial court found that the arrest here was unfounded and illegal and there is substantial evidence to support this finding. The answers to remaining questions on this appeal, those primarily dealt with in both the State's and the appellants' arguments, follow hard upon this conclusion, as the confessions did upon the arrest. The physical evidence seized from appellants linking them with the burglary and the statements they made confessing it, the only bases on which their convictions could stand, were

obtained only as a result of their arrest. By any existing rule of law, both the evidence and the confessions were therefore infected with its illegality and should have been suppressed. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). The trial court so ruled as to the physical evidence, but not as to their confessions, which it held untainted because "voluntary."

█ In focusing on the "voluntariness" of appellants' confessions, the trial court misconceived the issue before it. Voluntariness is a test of the admissibility of a confession under the common–law prohibition of compulsory self–incrimination. *State v. McCullum,* 18 Wash. 394, 51 P. 1044 (1897); 3 J. Wigmore, *Evidence* § 826 (rev. 1970). Its federal constitutional relevance is to the Fifth and Fourteenth Amendments. *See, e.g., Culombe v. Connecticut,* 367 U.S. 568, 6 L. Ed. 2d 1037, 81 S. Ct. 1860 (1961); *Bram v. United States,* 168 U.S. 532, 42 L. Ed. 568, 18 S. Ct. 183 (1897). It does not affect the issue here, the *Fourth* Amendment question of whether a confession is a "fruit of the poisonous tree" rooted in an arrest made without probable cause. *Wong Sun v. United States, supra* at 488.[1] Whether or not they were "voluntary," appellants' confessions were clearly born of their arrest, and therefore must fall with it.

---

[1] In *State v. Carpenter,* 63 Wn.2d 577, 388 P.2d 537 (1964) and *State v. Keating,* 61 Wn.2d 452, 378 P.2d 703 (1963), this court upheld convictions based on confessions which immediately followed illegal arrests on the grounds that they were "voluntary." Though *Carpenter* and *Keating* postdated *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) unaccountably neither decision cited or mentioned it or in any way justified their clear departure from the controlling federal rule. *See* Note, 39 Wash. L. Rev. 185, 190 n.24 (1964). Perhaps the inconsistency stemmed from lingering confusion over the extent to which federal Fourth Amendment law had been extended to the states by *Ker v. California,* 374 U.S. 23, 33, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). But whatever the reason for this oversight there can be no doubt now that the holding of *Wong Sun,* like other Fourth Amendment decisional law, applies to state action to the same extent it does federal. *Johnson v. Louisiana,* 406 U.S. 356, 365, 32 L. Ed. 2d 152, 92 S. Ct. 1620 (1972); *Traub v. Connecticut,* 374 U.S. 493, 10 L. Ed. 2d 1048, 83 S. Ct. 1899 (1963); *State v. Traub,* 151 Conn. 246, 248, 196 A.2d 755 (1963). We are therefore bound to follow it here.

8

The basic link between the appellants' arrest and their confessions inheres in the simple fact that, but for the one the other could not have been obtained. The very presence of appellants in police custody to make their statements was made possible only through the device of illegally arresting them. Under such circumstances, the Fourth Amendment forbids that their confessions be admitted. *Wong Sun v. United States, supra* at 485; *Hale v. Henderson,* 485 F.2d 266 (6th Cir. 1973), *cert. denied,* 415 U.S. 930 (1974); *United States v. Burhannon,* 388 F.2d 961 (7th Cir. 1968); *Collins v. Beto,* 348 F.2d 823 (5th Cir. 1965). If an arrest is illegal, a confession following it is admissible only if obtained "'. . . by means sufficiently distinguishable to be purged of the primary taint'" rather than "'. . . by the exploitation of that illegality'" (*Wong Sun v. United States, supra* at 488), such as when a significant intervening event[2] or a considerable lapse of time[3] separates the two. *Wong Sun v. United States, supra* at 485–91; *United States v. Owen,* 492 F.2d 1100, 1107 (5th Cir. 1974); *United States ex rel. Gockley v. Myers,* 450 F.2d 232, 236 (3d Cir. 1971), *cert. denied,* 404 U.S. 1063 (1972). Here, however, the causal chain is short and unbroken. There was no great lapse of time or noteworthy intervening event between the seizure and the statements, but only a short, continuous period of investigation and interrogation. There can thus be no basis for segregating the two, no justification for upholding the one while denouncing the other.

[2]*See, e.g., Wong Sun v. United States, supra* at 491 (defendant released on own recognizance between arrest and confession); *United States v. Owen,* 492 F.2d 1100 (5th Cir. 1974) (defendant released on bail, returned voluntarily to give statement); *Commonwealth ex rel. Craig v. Maroney,* 348 F.2d 22 (3d Cir. 1965) (defendant spoke with attorney before confession); *State v. Vangen,* 72 Wn.2d 548, 433 P.2d 691 (1967) (defendant confronted with legally seized evidence against him after refusing to confess); *cf. Johnson v. Louisiana,* 406 U.S. 356, 365, 32 L. Ed. 2d 152, 92 S. Ct. 1620 (1972) (defendant arraigned between arrest and lineup).

[3]*See, e.g., Wong Sun v. United States, supra* at 491 ("several days"); *United States v. Owen,* 492 F.2d 1100 (5th Cir. 1974) (4 days); *United States v. Cassity,* 471 F.2d 317 (6th Cir. 1972) (26 days); *State v. Traub, supra* (3 days); *State v.*

The second medium through which appellants' confessions were linked to and infected by their illegal arrest was their knowledge of the evidence against them seized incident to it. The appellants testified that they confessed because they "thought we were had" since "[t]he evidence was there." They confessed after watching the police gather evidence against them for almost 2 hours, and immediately upon being told that their female companions had made statements to the police.[4] The State has offered no alternative explanation for their action and has not met its burden of proving that the confessions were *not* produced by confronting appellants with the illegally seized evidence. *United States v. Falley,* 489 F.2d 33, 41 (2d Cir. 1973); *People v. Johnson,* 70 Cal. 2d 541, 555, 450 P.2d 865, 75 Cal. Rptr. 401, *cert. denied,* 395 U.S. 969 (1969). The illegality of the seizure of this evidence, which must be taken to have in turn produced appellants' confessions, would therefore preclude their admission even if the illegality of the arrest which preceded them did not.[5]

Through either of two channels, then, the seized evidence or the very presence of appellants, the illegality of appellants' arrests tainted their subsequent confessions.

*Vangen,* 72 Wn.2d 548, 433 P.2d 691 (1967) (24 hours); *but see Hale v. Henderson,* 485 F.2d 266 (6th Cir. 1973), *cert. denied,* 415 U.S. 930 (1974) (42–hour interval, confession suppressed); *Collins v. Beto,* 348 F.2d 823 (5th Cir. 1965) (36–hour interval, confession suppressed).

[4]The young women's statements did not, in fact, implicate appellants, but the interrogating officers apparently suggested to them that they did. The statements were, like the physical evidence taken from the car, evidence against appellants seized in violation of their Fourth Amendment rights and inadmissible against them. *United States v. Beasley,* 485 F.2d 60, 64 (10th Cir. 1973), *cert. denied,* 416 U.S. 941 (1974) (dictum); *United States v. Guana–Sanchez,* 484 F.2d 590 (7th Cir. 1973); *United States v. Mallides,* 473 F.2d 859 (9th Cir. 1973).

[5]Like the question of the taint running from the arrest to the confessions following therefrom, the impact of the confrontation of the appellants with illegally seized evidence is not affected by the "voluntariness" of their decision to confess. *United States v. Basurto,* 497 F.2d 781, 790–91 (9th Cir. 1974); *McCloud v. Bounds,* 474 F.2d 968, 970 (4th Cir. 1973); *People v. Johnson,* 70 Cal. 2d 541, 552, 450 P.2d 865, 75 Cal. Rptr. 401, *cert. denied,* 395 U.S. 969 (1969); *McNear v. Rhay,* 65 Wn.2d 530, 535, 398 P.2d 732 (1965).

We find no escape from the conclusion, applying established law to undisputed facts, that the arrest of appellants was improper and illegal, and that consequently the admission of their confessions violated the Fourth Amendment. Their convictions are therefore reversed.

STAFFORD, C.J., and ROSELLINI, HOROWITZ, and DOLLIVER, JJ., concur.

REVELLE, J.* (concurring)—I agree with the result reached by the majority but believe we should make clear the history involved.

The case arises upon a petition for rehearing granted subsequent to publication of *State v. Byers,* 85 Wn.2d 783, 539 P.2d 833 (1975), *review granted,* 84 Wn.2d 1014 (1974). The trial court found that the arrest was not based upon probable cause and was, therefore, illegal. Pursuant to this ruling, physical evidence gained incident to the arrest was excluded by the trial court. The defendants' confessions were admitted, however, presumably because they were voluntary. Based solely on the defendants' confessions, the trial court found the defendants guilty. In an unpublished opinion, the Court of Appeals affirmed the trial court. Defendants appealed to this court but neither party assigned as error the finding of the trial court that the arrest was illegal. We granted review. Based, at least in part, on a necessarily sua sponte de novo review of the evidence, we found the trial court in error on the issue of arrest, and held that the defendants were not arrested but were legally detained under *Terry v. Ohio,* 392 U.S. 1, 13, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Because the stop was lawful, and there were no other defects apparent in the record, the defendants' confessions were not the fruits of an unlawful arrest and were, therefore, held admissible, *State v. Byers,* 85 Wn.2d 783, 539 P.2d 833 (1975). Defendants

*Judge George H. Revelle is serving as a judge pro tempore of the Supreme Court pursuant to Const. art. 4, § 2A (amendment 38).

petitioned this court for rehearing, questioning the authority of this court to pursue independent review of constitutional issues where they had not been assigned as error or argued and where the defendants' constitutional rights had not been derogated. This court granted the petition for rehearing and today affirms the trial court's finding regarding the arrest and its illegality but reverses the convictions for reasons stated in the majority opinion.

I believe we should display the method and state our reasons for affirming the trial court's finding regarding the illegality of the arrest. These reasons appear to me to be as follows:

1. Where the facts are undisputed, a determination of the presence or absence of probable cause to stop or to arrest becomes a question of law, the judicial determination of which becomes a conclusion of law reviewable on appeal. *State v. Byers,* 85 Wn.2d 783, 539 P.2d 833, *citing Eberhart v. Murphy,* 113 Wash. 449, 194 P. 415 (1920).

2. Where findings of fact and conclusions of law are supported by substantial but disputed evidence, an appellate court will not disturb the trial court's ruling. *State v. Smith,* 84 Wn.2d 498, 527 P.2d 674 (1974); *State v. Chapman,* 84 Wn.2d 373, 526 P.2d 64 (1974). *See also House v. Erwin,* 83 Wn.2d 898, 524 P.2d 911 (1974); *Boise Cascade Corp. v. Pierce County,* 84 Wn.2d 667, 529 P.2d 9 (1974).

3. An appellate court will, however, undertake a de novo review of the evidence where constitutional issues are involved. *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965).

4. Yet, where (a) an appellate court determines that the trial court has based its ruling upon undisputed or disputed substantial evidence, (b) the ruling is not assigned as error on appeal, and (c) the ruling does not derogate the constitutional rights of the defendant but rather inures to the defendant's benefit, the appellate court will not disturb the trial court's ruling.

In explanation of point four above, I can find no authority, federal or state, for an appellate court's sua sponte review of constitutional issues where the rights of the accused are not at stake or where the defendant has not assigned as error the constitutional rulings. Indeed, the cases seem to take the opposite approach. I quote from Justice Utter's dissenting opinion in *State v. Byers,* 85 Wn.2d 783, 792, 539 P.2d 833 (1975):

> The majority's statement that the facts here should be reviewed de novo because constitutional rights are at stake turns the rule of *Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963) on its head. Appellate courts' careful scrutiny of the record in constitutional cases is necessary to insure "that constitutional privileges have not been abused" (*State v. Hoffman,* 64 Wn.2d 445, 451, 392 P.2d 237 (1964)), not to guard against the unwarranted protection of them.

From these propositions and the history before me, I conclude this court's authority to open the record for de novo review was properly questioned by appellants upon rehearing of this case and we have arrived at the correct result. I concurred with the majority result in the first hearing (the dissent here) because I then considered we had the authority to hold there was no arrest.

The second point I wish to make here is concerned with the majority's substantive analysis. I now agree with the majority's analysis regarding the inadmissibility of the physical evidence and the confessions as they were the fruits of an arrest not based on probable cause, therefore illegal and not purged of their original taint through time or intervening circumstances. I also agree that the voluntariness of a confession is a Fifth Amendment issue totally irrelevant to a determination of Fourth Amendment rights as held in *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). Given, however, that we have reversed the trial court's ruling on the admission of the confessions by recognizing this viewpoint I believe we should assert that to the extent *Wong Sun v. United States, supra,* is inconsistent with the earlier decisions in

this jurisdiction, namely, *State v. Carpenter,* 63 Wn.2d 577, 388 P.2d 537 (1964), and *State v. Keating,* 61 Wn.2d 452, 378 P.2d 703 (1963), these decisions are no longer correct statements of the law.

HAMILTON, J. (dissenting)—For the reasons stated in *State v. Byers,* 85 Wn.2d 783, 539 P.2d 833 (1975), I would affirm the Court of Appeals. Accordingly, I dissent.

HUNTER and WRIGHT, JJ., concur with HAMILTON, J.