[No. 2289–2.   Division Two.   April 25, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. HARVEY
OREN FREEMAN, *Appellant*.

*Jack Welch* and *J. Dean Morgan* of *Clark County Legal
Services*, for appellant.

*James Carty, Prosecuting Attorney,* and *John Hilzer, Deputy,* for respondent.

PEARSON, J.—Harvey Oren Freeman was convicted of a robbery which occurred on November 26, 1975. His appeal raises five claims of error: (1) that evidence seized or obtained as a result of the stop of an automobile in which he was riding at the time of his arrest should have been suppressed; (2) and (3) that cumulative evidence of the failure of an eyewitness to correctly identify him should not have been excluded; (4) that the defense should have been allowed to call a person incorrectly identified by the eyewitness; (5) that the exclusion of certain testimony offered to show the bias of a witness for the State was error. We affirm.

On November 26, 1975, a man entered the back door of Skipper's Fish and Chips Restaurant in Vancouver, Washington, demanded and received money from the manager and a chef. The robber was described as having worn a gray or salmon colored sweatshirt with the hood drawn tightly over his head, sunglasses, faded jeans and tennis shoes. Investigators surmised that he left the vicinity on foot along a trail to the south. Investigation in that direction revealed a salmon colored sweatshirt, evidently recently discarded, lying near a trail a few blocks from the restaurant. Footprints apparently made by tennis shoes were discovered leading as far as a turnout in a nearby road, where fresh automobile tracks were observed. The turnout was one seldom used for parking by automobiles in the last 10 years.

A few weeks later, on December 14, 1975, Police Officer Alfred Carter of the Vancouver Police Department was patrolling the area of Skipper's Fish and Chips when he noticed a car parked in the same turnout. He noted the color and license number and the fact that there was one man seated in the driver's seat. He proceeded to Skipper's where he turned around, returned in the same direction from which he had come, and passed the parked vehicle

again. Approximately 45 minutes later he received a call over the police radio directing him to "head for Skipper's." While on the way, he passed the car he had previously noted proceeding in the opposite direction. He immediately turned around to follow the car, and pulled it over within a few blocks. Upon confronting the two men in the car, he noticed that the driver was a man, and the passenger was wearing a blue hooded sweatshirt, faded jeans, and tennis shoes. The two occupants were searched for weapons, placed in the back seats of separate patrol cars, and told they were under arrest for "suspicion of robbery."

Officer Carter then searched the vehicle, finding a pair of sunglasses and defendant's billfold, which was lying on the front seat. He next found a chrome–plated revolver, similar to the one described as having been used in the first robbery. It was located about 50 to 60 feet from the suspects' car in a position indicating it could have been thrown from the car. At approximately that time he learned, via his radio, there had been an attempted robbery of Skipper's by a man suspected to be the same person who had robbed them on November 26. Defendant and his accomplice were then taken to the police station and charged with the November 26 robbery.

At a pretrial hearing, the trial court ruled that the officers made an unlawful arrest and search of the car. The items seized, namely, the billfold and sunglasses, were not allowed in evidence. Both parties acknowledge the correctness of this ruling. *State v. Byers*, 88 Wn.2d 1, 559 P.2d 1334 (1977).

However, defendant's first assignment of error contends the initial stop was not justified, and that all evidence obtained as a result of the stop, namely, the pistol, the sweatshirt, defendant's identity, and the accomplice's confession, must also be suppressed as fruits of an unconstitutional intrusion. We disagree.

■■ Whenever the facts are not in dispute and a fundamental constitutional right is in issue, as here, the appellate court must make its own independent examination and

evaluation of the facts. *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). Whether the facts and circumstances were sufficient to constitute a well–founded suspicion is a question of law which is reviewable upon appeal. *State v. Byers, supra; Eberhart v. Murphy,* 113 Wash. 449, 194 P. 415 (1920).

Our review of the record persuades us that Officer Carter, in view of his experience, his knowledge of the area, and his knowledge of what had transpired both on December 14 and previously on November 26, coupled with good police instincts while responding to a present emergency call to the same establishment that had been robbed once before, had a well–founded suspicion of possible criminal activity which justified an investigatory stop of the vehicle in which defendant was riding. *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974); *State v. Serrano,* 14 Wn. App. 462, 544 P.2d 101 (1975).

In *State v. Gluck, supra* at 426, the court approved the police practice of making investigatory stops under circumstances in which an arrest or search would not be justified.

> [W]here officers entertain a well–founded suspicion not amounting to probable cause, they may stop the suspected person, identify themselves and require the suspect to identify himself and explain his activity without being adjudged to have made a formal arrest. *State v. Rankin,* 477 S.W.2d 72 (Mo. 1972); *United States v. Bonanno* [180 F. Supp. 71, 80 (S.D.N.Y. 1960)].

We hold that an investigatory stop was justified in this case in order for Officer Carter to satisfy himself that the vehicle he had previously observed parked in an unusual place with one occupant, and later observed with two occupants proceeding away from the undetermined emergency at Skipper's, was not somehow involved in that emergency. *See State v. Serrano, supra.*

■ Defendant argues that even if the initial stop was justifiable, the subsequent seizure of his sweatshirt and billfold was made without probable cause and should be excluded from evidence, along with the testimony of Officer

Carter resulting from the identification of defendant. Defendant removed his sweatshirt and handed it to Officer Carter on his own volition. This consensual relinquishment of an item cannot fairly be construed as a seizure, although we have no doubt that defendant would not have been allowed to retrieve it for the purpose of hiding or destroying it at any time *after* his arrest. From the record we are unable to determine the precise time at which probable cause to arrest existed. It certainly existed when Officer Carter learned of the attempted robbery of Skipper's by a suspect dressed in a manner similar to defendant, coupled with discovery of the weapon in close proximity to the vehicle. In any event, considering the voluntary act of defendant in turning the sweatshirt over to police, we are unable to find an unlawful seizure prior to the existence of probable cause. As for defendant's billfold, it was never admitted into evidence. The testimony of Officer Carter regarding defendant's identity had no relation to any information contained in the billfold. Not only was defendant's identification the proper subject of the investigatory stop, but also the courtroom identification was made in response to a proper question—"Is the man that got out of the passenger side of the car that you observed that day in the courtroom today?" There was no error in the admission of the answer to this question.[1]

█ Finally, the identity of defendant's accomplice, Alldredge, and the subsequent confession which implicated defendant were also products of an authorized investigatory stop. Even were the confession of the accomplice deemed to be the product of an unlawful arrest, defendant would have no standing to contest the illegality of Alldredge's arrest, or to move to suppress the fruits of that arrest. *Alderman v.*

---

[1]Discovery of the pistol and its introduction into evidence are not challenged. In any event, such discovery and seizure were not related to either an unauthorized stop or the unlawful arrest which occurred.

*United States,* 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969).[2]

Defendant's second and third assignments of error involve the court's exclusion of defendant's offer of written lineup forms wherein the restaurant chef, an eyewitness to the robbery, failed to identify defendant in a lineup. The forms were offered after the witness had testified that she had not been able to make the correct identification, and were rejected by the judge as being only cumulative to the witness' showing that she was unable to come close to identifying anyone. While it is the law that evidence of pretrial identification is admissible as substantive and corroborative evidence, *State v. Simmons,* 63 Wn.2d 17, 385 P.2d 389 (1963), *State v. Gibson,* 16 Wn. App. 119, 553 P.2d 131 (1976), the admission of merely cumulative evidence is within the discretion of the trial judge. *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968); *State v. Wilson,* 38 Wn.2d 593, 231 P.2d 288 (1951); *State v. Kelly,* 3 Wn. App. 888, 478 P.2d 246 (1970). The offered exhibit being only cumulative, the trial court's refusal to admit it was not error.

Defendant's fourth assignment of error is that he was not allowed to present to the jury the person identified by the chef as being closest in height to the robber. However, the photographs of the lineup were admitted into evidence, and they enabled the jury to compare the height of defendant with that of the person selected by the witness. The prospective witness' testimony could have added nothing, and its exclusion was not error. *State v. Weiss, supra; State v. Wilson, supra; State v. Kelly, supra.*

Defendant's final assignment of error is that he was precluded from eliciting, from defendant's accomplice who testified for the State, testimony which could have shown the witness' bias in favor of the robbed establishment. The testimony would have been intended to show that the witness feared prosecution for having illegally taken money from the restaurant while he had been employed there prior to being fired. Apparently, however, the witness had not realized that he could be prosecuted for that theft. In any case,

---

[2]The dictum appearing in footnote 4 of *State v. Byers,* 88 Wn.2d 1, 9, 559 P.2d 1334 (1977) apparently does not consider the question of standing.

defendant was allowed to show bias by bringing out the fact that the witness had plea bargained and received a light sentence in return for his testimony at defendant's trial. The witness' testimony that he was unaware he could be prosecuted for the earlier theft was ruled inadmissible by the trial court. This ruling was within the court's discretion and did not constitute error. *State v. Cerny,* 78 Wn.2d 845, 480 P.2d 199 (1971).

The judgment is affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied June 7, 1977.

Review denied by Supreme Court November 4, 1977.