Charles Edward MORGAN,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 78–1416.

United States Court of Appeals,
Fifth Circuit.

Jan. 29, 1979.

Richard A. Dawson, Staff Counsel for Inmates, Texas Dept. of Corrections, Sugar Land, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., David M. Kendall, Jr., Joe B. Dibrell, Jr., Catherine E. Greene, Barbara M. Barron, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before GOLDBERG, Circuit Judge, SKELTON, Senior Judge *, and FAY, Circuit Judge.

SKELTON, Senior Judge.

Charles Edward Morgan, Petitioner, was convicted of the felony offense of rape by a jury in a district court of Dallas County, Texas, on February 29, 1968, and sentenced by the court to confinement for 99 years in the Texas Department of Corrections. He was granted a new trial on December 23, 1968. A second trial was held on March 21, 1972, in which he was again convicted by a jury of the offense of rape and again sentenced to a prison term of 99 years. His conviction was affirmed on his direct appeal by the Texas Court of Criminal Appeals, the court of last resort in Texas in criminal matters. *Morgan v. State,* 502 S.W.2d 722 (Tex.Cr.App.1973). His petition for a writ of certiorari was denied by the United States Supreme Court without opinion on May 28, 1974. *Morgan v. Texas,* 417 U.S. 917, 94 S.Ct. 2621, 41 L.Ed.2d 222 (1974).

The Petitioner then filed an application for a writ of habeas corpus on October 9, 1975, in the state district court. That court denied the application on October 21, 1975. The Texas Court of Criminal Appeals denied the application without a hearing and without a written order, based on the findings of the trial judge, on November 19, 1975.

On November 3, 1976, Petitioner filed an application for a writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division. Findings of Fact and Conclusions of Law were made by a magistrate, which were found to be correct and adopted by the District Court, who entered an order denying the application on January 13, 1978. The petitioner has now appealed that order to this court. We affirm.

* Senior Judge of the United States Court of Claims, sitting by designation.

## I. The Facts

The Petitioner, a negro, age 16 years and 11 months, and five other blacks, committed a brutal and aggravated gang rape upon a 29 year old white woman in Dallas, Texas, during the early morning hours of August 8, 1967. The victim, a hostess at a club, was driving home in her car after the club had closed, when she saw a car following her with its lights off. She speeded up and the pursuing car turned on its lights, pulled alongside her car, and forced it off the road. She backed her car into a front yard trying to escape, but her car stalled. She then hurriedly left the car and ran toward a nearby house. At that point, two or three of the occupants of the other car tackled her, knocked her to the ground, threatened to kill her if she screamed, and then dragged her by her feet and ankles back to their car, a station wagon, and threw her on the back seat. Several members of the gang immediately tore her clothes off of her. The driver of the station wagon, Raymond Jefferson, drove to a nearby alley where the victim was dragged from the car to the ground and two of the gang raped her. She was then thrown back on to the back seat of the car where she was subjected to multiple rapes by all six of the gang for a period of about two hours. The facts show that each member of the gang raped her twice except one, and he raped her once. A knife was held at her throat while she was being raped and she was constantly threatened with death if she resisted. Her throat received a cut from the knife her assailants used. Considering the eleven rapes that were committed during a period of almost two hours, it is obvious that for all practical purposes the victim was subjected to continuous rape during that period of time.

During the time the attacks were in progress, the members of the gang attempted to force the victim to commit sodomy, but did not succeed. They also talked about throwing her body in the Trinity River when they were through with her. One of them stole a ring she was wearing.

Finally, the victim feigned a loss of consciousness. At that point, one of the gang said, "This bitch has had it." They then dragged her from the car to some nearby bushes and kicked her under them with their feet. They left her completely naked. As they drove off, she observed that the last three numbers on the license tag of the car were "691." This was an important bit of evidence that assisted the police later on.

After the gang had left, the victim crawled from under the bushes and ran to a nearby house seeking help. An elderly man came to the door and on seeing her condition called his wife who put a robe on her. The man then called the police. When the police arrived, they found the victim hysterical and incoherent. However, she was finally able to tell them what had happened. She was then taken to a hospital for treatment.

The police went to the scene of the crime where they found a woman's bra, a blouse and a pair of pants with the zipper torn off. They also found a part of an envelope on which was written: "Raymond J., 3715 Savage, FL 1-0859." The officers went to that address and found that the "Raymond J." referred to Raymond Jefferson. His grandmother told the officers he could be found at another house. On going to the second address, they found a station wagon matching the description given to them by the victim and having license tags with numbers ending in "691." Jefferson was not there, but his sister gave the police permission to search the station wagon. Inside the vehicle, the officers found buttons and fragments of a zipper similar to those ripped off of the victim. Also, Jefferson's sister was wearing a ring matching the description of the ring taken from the victim.[1]

Jefferson and Petitioner were observed approaching the house while the officers were searching the station wagon and talk-

---

1. The bra, blouse, pants, buttons and zipper were all identified at the trial by the victim as being the clothing she was wearing when she was attacked. The ring was also identified as the one she was wearing when she was assaulted.

ing to Jefferson's sister. When they got within approximately 30 feet (10 steps) from the officers, the Petitioner abruptly turned and started walking away. Jefferson was arrested and when asked what he had been doing the night before and who had been with him, he mentioned the name of Petitioner. Jefferson was placed in the police car and the officers followed Petitioner and arrested him about a block and a half from Jefferson's house. The officers did not have a warrant for his arrest.

The Petitioner was taken to the police station and placed in a room alone for about two hours. He was not questioned nor was any force, violence or threats used against him. He was then taken before a magistrate who gave him a *Miranda* warning. (*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The Petitioner said he did not need a lawyer. He said he wanted to make a statement. The officer in charge then gave him the *Miranda* warning again. The Petitioner then dictated his statement which was taken down in long hand by the officer and then typed. After it was typed, it was read aloud in its entirety, including the *Miranda* warning, to the Petitioner, who read it along with the officer. He then signed it in the presence of the officer and a lady employee named Sharon Hullett, who signed the statement as a witness. In addition to the printed portion of the statement, which contained the *Miranda* warning the statement as dictated by the Petitioner contained the following:

"Last night, August 7, 1967, a little after dark I was at March and Roper Streets waiting for a girl on the corner when Raymond Jefferson, Butch (Thomas Samuel), and Moose (Ray Bell) came up in Raymond's mother's Rambler's station wagon. We went up to Ray Weddington's house and listened to records for a while and then drove around North Dallas. We also drove around in Oak Cliff for a while. We started home and on Lovers Lane we saw a white girl ahead of us in a car. She made a turn in front of us and she stopped the car and got out and fell on the ground. Ray Bell got out and brought her back to our car. He put her in the back seat. Ray and Thomas Samuel were in the back seat with her. Me and Ray Weddington were in the back part of the station wagon laying down. Raymond was driving. Raymond drove to an alley and parked. The girl got out and had her pants down around her knees. When she got out of the car in the alley she didn't have a blouse or bra on. She got down and then asked to get in the car. We put her on the back seat. We all had intercourse with her two times, except Ray Weddington. He only had her one time. She said her name was Marie and had one child and was 29 years old. She also said she worked at The Town Pump. After we had had intercourse with her, she got out and we drove off with her still in the alley. She didn't have any clothes on when we left. We went home."

At the trial, the Petitioner never questioned the voluntariness of the confession. In fact, he denied that he had signed it, but did admit that his signature was on it. He testified that he signed a blank piece of paper, but it is obvious that the jury did not believe him. Consequently, as stated by the Texas Court of Criminal Appeals in deciding his direct appeal, "no evidence before the jury raised the issue of voluntariness." 502 S.W.2d 723.

## II. The Admissibility of Petitioner's Confession

At the trial in the state court, the rape victim was not able to identify the Petitioner as one of those who raped her other than to say that he had "the same general size and shape and appearance of one of the men." None of the victim's clothing were found in his possession nor in a car owned, possessed or controlled by him. Consequently, his written confession was the only evidence connecting him with the crime. He contends here that his arrest was illegal and that his confession was a result of his illegal arrest and is a fruit of the poisonous tree of his illegal arrest. We do not agree. Two tiers of the state courts rejected this

argument as shown by the following proceedings.

Prior to the beginning of the trial, the Petitioner filed a motion in the state district court to suppress the confession. A full one-day hearing was conducted by the court outside the hearing of the jury as to the admissibility of the confession. Two police officers and the Petitioner testified, creating a record of 53 pages of testimony. At the conclusion of the hearing, the trial judge made the following findings and conclusions:

"After hearing the testimony the Court is of the opinion that the Defendant was advised of the nature of the charges against him, of his right to retain counsel of his choice, of his right to remain silent, of his right to an attorney present during any interview with peace officers or attorneys representing the State; that this attorney could be present during any interviews with peace officers or attorneys representing the State and of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is unable to pay for an attorney to represent him.

"The Defendant was advised that he was not required to make a statement and that any statement made by him may be used in evidence against him at his trial. Therefore, the Court is of the opinion that the Defendant's statement is voluntary and that it complies with the statutes of the State of Texas in every respect and therefore it will be admitted into evidence as the voluntary statement of the Defendant in the above styled and numbered cause."

Thereafter, the court proceeded to hear the evidence on the merits of the trial. During the proceedings, when Petitioner's confession was offered into evidence, the following objection was offered by his counsel and the ruling of the court and exception of counsel was:

"Q. Okay, is that in fact the statement that was given by Charles Edward Morgan, Jr., the man you have identified here in court?

A. Yes, sir.

MR. ROLFE: We offer State's Exhibit No. 2 at this time, Your Honor.

MR. HAMPTON: Your Honor, we renew our objections which we have already made outside the presence of the jury and we also object to it for the further reason that *the statement is a direct result of an illegal arrest without warrant of the Defendant, Charles Edward Morgan, Jr. on the same day and that the confession is the fruit of the poisonous tree resulting from this illegal arrest* taken from him without counsel at a time when he was of immature years and unable to decide for himself what his rights were; we object to this alleged statement and ask the Court to exclude it from the consideration of the jury.

THE COURT: Overrule your objection to it.

MR. HAMPTON: Note our exception to the Court's ruling."

(Emphasis supplied).

Thus, we see that the argument that Petitioner's confession was a result of his alleged illegal arrest was squarely presented to the state trial court and decided adversely to his contention.

The trial court's charge to the jury complied with the Texas law regarding confessions. The Petitioner requested a special charge on the confession, but it was refused by the court. After his conviction, the Petitioner filed a motion for a new trial in which he alleged that the confession was improperly admitted into evidence. The motion was denied by the court.

Not being satisfied with his conviction, the Petitioner appealed directly to the Texas Court of Criminal Appeals. One of his points on this appeal, as stated in his brief, was described as "Ground of Error Number Two, Appellant's Confession Was Inadmissible As a Result of Illegal Detention." Under the argument of this Ground of Error, the Petitioner stated, "Without question the illegal detention induced the confession, and the confession should have been excluded from evidence. *Lacefield v. State* (Tex.Cr. App.1967), 412 S.W.2d 906."

The State of Texas answered this contention in its brief filed in that court by saying:

"Based on these facts [the arrest, *Miranda* warnings, the signing of the confession, etc.], it is clear that appellant was not influenced in any manner by an alleged illegal arrest or detention. In *Lacefield v. State*, 412 S.W.2d 906 (Tex. Cr.App.1967) this court held that unless the statements are 'intimately bound up' with the conditions and circumstances of an illegal arrest so that the statements are not the product of the defendant's will, then an illegal arrest or detention will not bring a defendant's statements under the exclusionary rule. The facts of Lacefield's arrest and subsequent confession are similar in nature to the case at bar. . . . His confession was held admissible." (Pages 12–13).

Thus, we see that Petitioner's attempt to invalidate his confession under the exclusionary rule because of his alleged illegal arrest was squarely presented to the Texas Court of Criminal Appeals, as it had been to the trial court. The appellate court rejected Petitioner's theory, saying:

"Next, appellant contends that his written confession was not admissible as it was obtained as a result of an illegal detention.

. . . . .

"A confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that its author was under arrest or in custody at the time, even though the arrest may have been under invalid process or without any process or legal right. *Lacefield v. State*, Tex.Cr. App., 412 S.W.2d 906.

"Appellant's second ground of error is overruled." 502 S.W.2d 723.

The *Lacefield* case, cited by the Court of Criminal Appeals, is very much like the instant case on the question before us. There, the court stated:

"It does not appear that appellant seriously questions the voluntariness of the confession. The question posed by appellant is whether or not a confession con-

cededly voluntary is to be excluded from evidence if made by the appellant following an unlawful arrest." 412 S.W.2d 907. The court also stated:

"Therefore, a confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that its author was under arrest or in custody at the time, even though the arrest may have been under invalid process or without any process or legal right." 412 S.W.2d 908.

. . . . .

"Both state and federal courts have had occasion to pass on the contention here made that a confession following an illegal arrest is ipso facto inadmissible under *Wong Sun* (*Wong Sun v. U. S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441). The contention has been generally rejected. *Rogers v. United States*, 330 F.2d 535, 540–542 (5th Cir.); *Hollingsworth v. United States*, 321 F.2d 342, 350–351 (10th Cir.); *Burke v. United States*, 328 F.2d 399, 402–403 (1st Cir.) affirming 215 F.Supp. 508, 511; *United States v. McCarthy*, 249 F.Supp. 199; *State v. Keating*, 61 Wash.2d 452, 378 P.2d 703; *Prescoe v. State*, 231 Md. 486, 191 A.2d 226; *People v. Freeland*, 218 Cal.App.2d 199, 32 Cal.Rptr. 132; *State v. Kitashiro* (48 Haw. 204) 397 P.2d 558.

. . . . .

"We find nothing in *Wong Sun* to require a holding that the confession here was improperly admitted." 412 S.W.2d 909.

In the instant case, counsel for Petitioner has obviously misread the *Lacefield* case. In this connection, he says in his brief:

"On appeal, Petitioner was foreclosed from raising the *Brown* issue because of the Texas Court's decision in *Lacefield v. State*, 412 S.W.2d 906 (Tex.Cr.App.1967), which adopted a *per se* rule of admissibility of a confession, despite any illegality in the arrest, if given pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." (Page 3).

. . . . .

"In *Lacefield*, the issue presented to the Texas Court of Criminal Appeals was

whether the *Wong Sun v. U. S.*, 317 [371] U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), doctrine of the 'fruit of the poisonous tree' was negated in arrest/confession situations by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Texas Court rejected the *Brown v. Illinois* solution, citing *Rogers v. U. S.*, 330 F.2d 535 (5th Cir. 1964); *Hollingsworth v. U. S.*, 321 F.2d 342 (10th Cir. 1963); and *Burke v. U. S.*, 328 F.2d 399 (1st Cir. 1964), *et al.*" (Page 10).

The opinion of the Court of Criminal Appeals in the *Lacefield* case, contrary to the above statements in Petitioner's brief, did not adopt a *per se* rule of admissibility of a confession given while unlawfully arrested if given pursuant to *Miranda v. Arizona*. In fact, the court did not even mention such a rule. The court did reject the converse of the rule to the effect that a confession following an illegal arrest is ipso facto inadmissible under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This is in accord with the opinion of the Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), where the court stated:

"But '[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.' *United States v. Calandra*, 414 U.S. (338), at 348, 94 S.Ct. 613, 38 L.Ed.2d 561. See also *Michigan v. Tucker*, 417 U.S. 433, 446–447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974)." 422 U.S. 600, 95 S.Ct. 2260, 45 L.Ed.2d 425.

Also, contrary to Petitioner's assertions in his brief, the *Lacefield* court did not reject the *Brown v. Illinois* solution. The Supreme Court in *Brown v. Illinois* rejected the *per se* admissibility rule, but on the other hand refused to adopt any alternative *per se* or "but for" rule, saying in this regard:

"While we therefore reject the per se rule which the Illinois courts appear to have accepted, we also decline to adopt any alternative per se or 'but for' rule. The petitioner himself professes not to demand so much." 422 U.S. 603, 95 S.Ct. 2261, 45 L.Ed.2d 427.

In that case, the Supreme Court rules that the admissibility of a confession depends on the facts of each case. The court said:

"*The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case.* No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see *Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun v. United States*, 371 U.S., at 491, 83 S.Ct. 407, 9 L.Ed.2d 441. The voluntariness of the statement is a threshold requirement. Cf. 18 U.S.C. § 3501 (18 U.S.C.S. § 3501). And the burden of showing admissibility rests, of course, on the prosecution." 422 U.S. 603–04, 95 S.Ct. 2261–62, 45 L.Ed.2d 427.

As shown above, Petitioner's claim that his confession was inadmissible because it was induced by his illegal arrest and should have been excluded because of the exclusionary rule under the Fourth and Fifth Amendments to the Constitution, was presented to the trial court and to the Court of Criminal Appeals and fully considered and rejected by both courts. He admits in his brief here that the issue was raised and decided by both courts. He says:

"Moreover, Petitioner's trial attorney raised both at trial and on appeal the specific objection, commensurated with *Brown*, that the confession was involuntary and inadmissible as a result of an illegal arrest and detention." (Page 9).

"Petitioner has exhausted his state remedies. He raised his issue, concerning the validity of his arrest and detention and the conterminous admissibility of the resulting confession, on direct appeal." (Page 5).

It is clear from these admissions and from our detailed discussion above of the proceedings in both the trial court and the appellate court that the Petitioner was provided an opportunity in both courts for a full and fair litigation of his Fourth Amendment claim, and that the claim was actually litigated and adjudicated in both courts. Therefore, the only remaining question is whether or not under these circumstances the Petitioner may be granted habeas corpus relief by the federal courts on the ground that his confession obtained, while he was under an alleged illegal arrest, was introduced at his trial.

### III. The Habeas Corpus Proceedings

After the Court of Criminal Appeals affirmed Petitioner's conviction and the United States Supreme Court denied his application for a writ of certiorari, he filed an application for a writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division. He alleged in his application that his arrest was illegal and that his confession was inadmissible as a result of an illegal arrest and detention.

The district court found without an evidentiary hearing that "there is evidence to support a finding that the arrest was, in fact, legal." Of course, if the arrest was legal, that would end the matter under the facts of this case. However, we do not need to decide that question in view of our disposition of the case.

As stated by the district court, even if Petitioner's Fourth Amendment claim of unlawful arrest is considered in connection with his Fifth Amendment claim relating to the voluntary nature of his confession, he has still failed to establish grounds for relief in federal court. The fact that one may have been illegally arrested does not, standing alone, render his confession involuntary and inadmissible under either state or federal standards. Whether or not a confession is involuntary and inadmissible under the principles set forth in *Wong Sun, supra,* must be answered on the facts of each case. See *Brown v. Illinois, supra,* where the Supreme Court stated:

"It is entirely possible, of course, as the State here argues, that persons arrested illegally frequently may decide to confess, as an. act of free will unaffected by the initial illegality.

. . . . .

"The question of whether a confession is the product of a free will under *Wong Sun* must be answered on the facts in each case." 422 U.S. 603, 95 S.Ct. 2261, 45 L.Ed.2d 427.

The burden of showing the admissibility of the confession rests on the prosecutor. He fully discharged this burden in this case, and the decision of the state district court and that of the Court of Criminal Appeals show this to be true. There is nothing in the record that shows that the confession was in any way involuntary, nor that it was induced by an illegal arrest. The facts are not in dispute. They were fully developed in the state trial court and in the appellate court.

It is now well established that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained as a result of an illegal arrest was introduced at his trial. This was the holding of the Supreme Court in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), where the court stated:

In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 494, 96 S.Ct. 3052, 49 L.Ed.2d 1088.

In speaking for our court, Chief Judge Brown followed *Stone v. Powell* in a comprehensive and exhaustive opinion in *O'Berry v. Wainwright*, 546 F.2d 1204 (5 Cir. 1977) from which opinion we quote extensively as follows because it answers the controlling questions and arguments in the case before us:

"*Full and Fair State Hearing*

"In *Stone v. Powell*, 1976, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, the Supreme Court held that 'where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.' *Id.* at 482, 96 S.Ct. at 3046, 49 L.Ed.2d at 1080. Whether or not we will even consider affirming the grant of habeas relief by the District Court thus depends on whether or not the State 'provided an opportunity for full and fair litigation' of Petitioner's Fourth Amendment claim. If it did, the matter ends there, and we must reverse the District Court. If it did not, then our analysis is only begun, and we must inquire further whether or not the petition should be granted on the merits of this case." 546 F.2d 1209–10.

The court stated further:

"Our analysis must begin with the determination of what the Supreme Court meant by 'opportunity for full and fair consideration' of Fourth Amendment claims by state courts—a task not made easier by the Court's failure to define that term in *Stone*." 546 F.2d 1210.

.  .  .  .  .

"In *Stone*, on the other hand, the answer to the question of whether the state has given the Petitioner a full and fair hearing has a much more drastic and far-reaching effect. Although the Court in *Stone* stopped short of saying that its decision was a limitation on federal court jurisdiction, see *Stone, supra*, 428 U.S. at 494 n. 37, 96 S.Ct. at 3052 n. 37, 49 L.Ed.2d at 1088 n. 37, the effect of finding full and fair consideration by the state courts of petitioner's Fourth Amendment claims is to prevent the exercise of federal court power altogether—a much more drastic result than that which is the result of the verbally similar finding made by a federal court under the *Townsend* (*Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770), formula. Despite the assertions of the Supreme Court in *Stone* to the contrary, we would be blind to reality to pretend that the practical effect of that decision is not a limitation on federal court jurisdiction." 546 F.2d 1211–12.

The Court then held that "an opportunity for full and fair consideration" sometimes requires consideration by two tiers of state courts and sometimes by only one, saying:

"The initial question presented, therefore, is whether or not 'an opportunity for full and fair consideration' requires consideration at both the state trial and state appellate court level, or whether it requires consideration by only one level of state courts. Consistently with the ambiguity of the Supreme Court's opinion, *we conclude that sometimes 'full and fair consideration' means consideration by two tiers of state courts—sometimes it requires consideration by only one.*

"*We conclude* that where there are *facts* in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court. *Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims.* Such a distinction makes practical sense because it ensures that a criminal defendant is given a full hearing on his Fourth Amendment claims and the facts underlying those claims *at least once at the state level,* but it does not

require the State to hold evidentiary hearings which would be useless and inefficient." 546 F.2d 1213 (Emphasis supplied).

Thus, it is clear that where the facts are not in dispute, as in the instant case, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claim. In our case, such consideration was fully given by the trial court as well as by the appellate court. Therefore, two tiers of the state courts considered Petitioner's claims.[2]

The court in *O'Berry v. Wainwright* added that the state appellate court was squarely faced with the Petitioner's Fourth Amendment claims and that he not only had an opportunity for full and fair litigation of such claims in that court, but also took advantage of that opportunity to exhaustively and persuasively present his claims to that forum.[3] In this connection the court said:

"In this case, the state appellate court was squarely faced with Petitioner's Fourth Amendment claim. The Court had granted the Petitioner the opportunity to use this habeas corpus proceeding 'for full appellate review by this Court of the judgment and sentence of the [Trial Court], on authority of *Hollingshead v. Wainwright*, Fla.1967, 194 So.2d 577 . . . .' Furthermore, the Petitioner took full advantage of this opportunity, by setting forth the facts and law respecting his Fourth Amendment claim

exhaustively and persuasively before the state appellate court."

.     .     .     .     .

"Under the circumstances of this case, therefore, we conclude that the state appellate court's disposition of Petitioner's Fourth Amendment claims . . . satisfied the requirement in *Stone* that the State provide an 'opportunity for full and fair litigation' of Fourth Amendment claims. Since there are no facts in dispute concerning this search, we also conclude that consideration of these Fourth Amendment claims by the District Court of Appeals was sufficient. Accordingly, we are precluded by the Supreme Court's decision in *Stone* from considering Petitioner's Fourth Amendment claims in his federal habeas corpus petition." 546 F.2d 1217–18.

Finally, the court concluded:

"Since we find that Petitioner received a full and fair consideration of his Fourth Amendment claims in the Florida state courts, we are precluded by the doctrine announced in *Stone v. Powell*, 1976, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, from considering Petitioner's Fourth Amendment claims in a federal habeas proceeding." 546 F.2d 1206.

As can be seen from the above quotations from the court's opinion in *O'Berry v. Wainwright*, most of the principles involved there are practically identical to those in the instant case. The decision in that case, together with the Supreme Court's decision in *Stone v. Powell, supra*, are dispositive of the case before us.

---

2. If it could be said that Petitioner deliberately by-passed the state courts for making his Fourth Amendment claims known or if he knowingly waived such claims, which is not the case here, he could not be granted any habeas corpus relief in the federal courts even if there was no hearing held on his claims. In this connection, the court held in *O'Berry v. Wainwright, supra*:

"Second, *Stone* only requires that the State provide an *opportunity* for full and fair adjudication of Fourth Amendment claims. Thus, if Petitioner deliberately by-passed state procedures for making his Fourth Amendment objections known or if he knowingly waived his Fourth Amendment objec-

tions, then a federal District Court would be precluded from granting habeas corpus relief on Fourth Amendment grounds despite the fact that no state hearing was in fact held on Petitioner's claims. *Stone*, supra, at 485, 96 S.Ct. at 3047, 49 L.Ed.2d at 1082." 546 F.2d 1213–14.

3. Unlike our case, no opportunity for a full and fair litigation of petitioner's Fourth Amendment claims was provided in the trial court in *O'Berry v. Wainwright*. However, such opportunity was afforded him at the appellate level. The court held that this met the requirements of *Stone v. Powell*.

Accordingly, we hold that the facts are not in dispute, and that the Petitioner was afforded an opportunity for full and fair litigation of his Fourth Amendment claims in both the state trial court and the Court of Criminal Appeals, and that he actually litigated such claims in both courts. Consequently, we are precluded from considering his Fourth Amendment claims in this federal habeas corpus proceeding. The judgment of the district court denying the writ is affirmed.

AFFIRMED.