[No. 3427–5–III.  Division Three.  August 12, 1980.]

THE STATE OF WASHINGTON, *Appellant,* v. GREGORY ALLEN SYKES, *Respondent.*

*Curtis Ludwig, Prosecuting Attorney,* and *William A. Bartlett, Deputy,* for appellant.

*Robert Ingvalson,* for respondent.

MUNSON, J.—The State appeals an order suppressing evidence of marijuana taken from defendant's vehicle. One issue is presented: Did the police lawfully seize the marijuana pursuant to an investigatory stop? We answer yes and reverse.

The facts are undisputed. Detective Panther of the Richland Police Department was contacted by an individual during the week prior to defendant's arrest on February 1, 1979. The informant expressed a desire to help the police and supplied information concerning drug users in the local

area; this information corresponded with information the detective had previously received. On January 30, the informant told the detective he had been in contact with the defendant; the detective had previously received information concerning the defendant's activities. On February 1, the informant told the detective he had been approached by the defendant the day before; the informant had observed approximately 1 pound of marijuana in a green "ammo box" in the back seat on the floorboard of defendant's car which he described by color, make and license number. The informant also advised that later that day the defendant and a person named Tony, whom he described, would arrive in the defendant's automobile in a specific parking lot at a local high school during the first lunch break for the purpose of selling marijuana to the high school students.

The detective and other officers set up a surveillance of the high school. The defendant's automobile arrived and the occupants fit the informant's description. The driver parked out of the view of the police, stayed only a few minutes and then drove away. A patrol car stopped the vehicle shortly after it left the school parking lot.

The detective approached defendant's automobile on foot and saw the green "ammo box" on the rear floorboard. He asked the defendant to step from his car, which he did without objection; they walked to the front of the patrol car, whereupon the defendant was advised of his *Miranda* rights. Defendant indicated he understood those rights. The detective then advised him of his suspicions and asked if he in fact did possess marijuana. The defendant replied yes and after being advised of his right to refuse, consented to the search of his car. Marijuana was found inside the "ammo box".

The trial court held the stopping of the vehicle was an illegal arrest, that the marijuana was obtained as a result thereof, and suppressed the evidence. *See State v. Byers,* 88 Wn.2d 1, 7–8, 559 P.2d 1334 (1977), *rev'g* 85 Wn.2d 783, 539 P.2d 833 (1975).

The first issue, relating to the stop, involves the fourth amendment to the United States Constitution, which prohibits "unreasonable searches and seizures." Article 1, section 7 of the Washington State Constitution has been interpreted accordingly. When fundamental constitutional rights are in issue, an appellate court may make its own independent examination and evaluation of the facts. *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). Furthermore, when the facts are undisputed, the judicial determination becomes a conclusion of law reviewable on appeal. *State v. Byers,* 85 Wn.2d 783, 786, 539 P.2d 833 (1975), *rev'd on other grounds,* 88 Wn.2d 1, 559 P.2d 1334 (1977); *State v. Freeman,* 17 Wn. App. 377, 379–80, 563 P.2d 1283 (1977). This determination rests upon a review of the totality of facts and circumstances within the officer's knowledge at the time of the officer's stop. *State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979). In *State v. Sinclair,* 11 Wn. App. 523, 528–30, 523 P.2d 1209 (1974), the court set forth the pertinent ground rules for an investigatory stop:

> A police officer, in the discharge of his routine law enforcement duties prior to having probable cause to believe that a person he seeks to question has committed a crime for which an arrest may be made, may detain and question that suspect concerning his knowledge of the commission of a crime, including one in process of being committed or about to be committed, without the detention or questioning being considered an arrest and without the necessity of the police officer first giving the person questioned *Miranda* warnings. *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Slate [sic] v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974); *State v. Smith,* 9 Wn. App. 279, 511 P.2d 1032 (1973); *State v. Haverty,* 3 Wn. App. 495, 475 P.2d 887 (1970). . . .
>
> . . .
>
> An officer, following a lawful investigatory stop and detention based on "a well–founded suspicion not amounting to probable cause" to arrest, may reasonably wish to check the suspect's answers to investigatory

questions. . . . Because the investigation is still in progress, the officer may temporarily detain a suspect pending the receipt of results of the police headquarters radio check. . . .

. . . As J. Cook [*Constitutional Rights of the Accused: Pretrial Rights* § 17 (1972)], *supra* at 131, states:

[T]he suspect may himself reveal evidence which provides probable cause to arrest. . . . [T]he suspect may, by virtue of his own incriminating statements, provide the probable cause to justify his arrest.

*State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974); *State v. Serrano,* 14 Wn. App. 462, 465–66, 544 P.2d 101 (1975).

Likewise, in *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 45 L. Ed. 2d 607, 95 S. Ct. 2574, 2580 (1975), quoting from *Adams v. Williams,* 407 U.S. 143, 145–46, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1973), the court states:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* [*v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)] recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

■ Here, the officer had information from an informant known to him who had corroborated previous information. The informant had specifically advised the detective he had seen marijuana in a green "ammo box" in the back seat of the defendant's car, which he described by color, make and license number, and that he would be at the school parking lot at a given time. These facts were subsequently confirmed by the detective's own observations. Thus, the situation differs from the anonymous informant's tip held insufficient in *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243, *cert. denied,* 423 U.S. 891, 46 L. Ed. 2d 122, 96 S. Ct.

187 (1975); *State v. Moreno,* 21 Wn. App. 430, 585 P.2d 481 (1978), and *State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973). In *State v. Lesnick,* 10 Wn. App. 281, 285, 518 P.2d 199 (1973), *aff'd, State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975), the court noted:

> A distinction must be made between merely *descriptive* information which enables the officers to simply determine the identity of the subject, and a tip which incorporates detailed *predictive* information about a suspect's movements, which may, upon corroboration, justify a conclusion that the informer was privy to the suspect's activities. Such a conclusion may support an inference that the informer's information was obtained in a reliable way. *See Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959), and *State v. White,* 10 Wn. App. 273, 518 P.2d 245 (1973).

The detective in this case satisfied himself that the information the informant gave confirmed what the detective knew about criminal activities in the community and specifically about the defendant. The informant said he had seen marijuana in the defendant's car. We find the information, which was corroborated, was sufficient to establish the informant's reliability and was sufficient justification for the officer to make an investigatory stop. *See United States v. Heredia–Castillo,* 616 F.2d 1147 (9th Cir. 1980).

■ After the officer stopped defendant's car, he asked him to step from the car, which defendant apparently did voluntarily; he does not contend otherwise. Such an order is a permissible "de minimis" intrusion after a car has been lawfully stopped. *Pennsylvania v. Mimms,* 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330, 333 (1977). After the defendant got out of his car, he was advised of his *Miranda* rights. While this may not have been necessary, as a result of the investigatory stop, it obviously was done as an exercise of caution on the part of the officer. There is no contention the defendant failed to comprehend his rights. The officer explained to him the purpose of the stop and then directly asked whether the defendant had possession of marijuana, to which the defendant voluntarily replied yes. That

answer, in and of itself, would provide the officer with probable cause to arrest the defendant. It does not appear he made any overt attempt at that time to do so. The officer explained to the defendant he would like to search the vehicle, although the defendant had a right to refuse the search. The detective then asked directly if he could be permitted to do so; the defendant gave his voluntary consent. This procedure is not that type of police conduct which the exclusionary doctrine seeks to prohibit.[1] *Cf. State v. Thompson,* 93 Wn.2d 838, 613 P.2d 525 (1980). There was a reasonable basis for a suspicion, made upon objective facts, that this defendant was involved in criminal activities. This procedure complies with the standards enunciated in *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980), *rev'g State v. Larson,* 21 Wn. App. 506, 587 P.2d 171 (1978). Thus, the investigative stop was lawful, the admission of the fact of possession was voluntary, and the consent to search the vehicle was voluntarily given.[2] *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); *United States v. Richards,* 500 F.2d 1025 (9th Cir. 1974), *cert. denied,* 420 U.S. 924, 43 L. Ed. 2d 393, 95 S. Ct. 1118 (1975); *United States v. Van Lewis,* 409 F. Supp. 535 (E.D. Mich. 1976).

█ Defendant cross–appeals, claiming the trial court erred in refusing to require disclosure of the identity of the informant on whom the officers relied for the stop. The contention is that the identity of an informant must be disclosed when there is no showing of probable cause apart from the informant's communication. *People v. Williams,* 51 Cal. 2d 355, 333 P.2d 19 (1958). As we have previously found, the reliability of the informant was corroborated by

---

[1]Nor is it the type of conduct sought to be prevented by *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979); *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975).

[2]*See State v. Shoemaker,* 85 Wn.2d 207, 533 P.2d 123 (1975).

the detective's prior knowledge and the subsequent corroboration of the information the informant gave describing the vehicle, its occupants, and its location. These facts were based not only on the informant's personal observation, but information which had obviously come to him from the defendant. The defendant has the burden of showing circumstances exist which would justify an exception to the State's privilege of nondisclosure. That burden has not been sustained. *State v. Harris,* 18 Wn. App. 564, 569 P.2d 84 (1977), *aff'd,* 91 Wn.2d 145, 588 P.2d 720 (1978). *State v. Burleson,* 18 Wn. App. 233, 566 P.2d 1277 (1977); *State v. White,* 10 Wn. App. 273, 279, 518 P.2d 245 (1973). *See* Annot., *Accused's right to, and prosecution's privilege against, disclosure of identity of informer,* 76 A.L.R.2d 262 *et seq.* (1961).

Order of dismissal is reversed and the matter remanded for further proceedings.

ROE, J., concurs.

GREEN, J. (dissenting)—In my view, the officers exceeded the scope of the questioning permitted on an investigatory stop. For that reason, I am constrained to dissent.

It is well established that in appropriate circumstances the Fourth Amendment permits a law enforcement officer to stop a suspect on facts that do not constitute probable cause if the officer's observations reasonably lead him to believe that the suspect is committing or is about to commit a crime. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975). However, the scope of the officer's stop and inquiry is limited. He may only ask the detainee to identify himself and explain the suspicious circumstances. *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974); *State v. Moreno,* 21 Wn. App. 430, 434, 585 P.2d 481 (1978), *review denied,* 91 Wn.2d 1014 (1979). Once the officer proceeds to ask a detainee specific questions designed to elicit incriminating statements, he is adjudged to have

made an arrest. At that point, the officer must have probable cause to arrest and have advised the suspect of his *Miranda* rights. *State v. Moreno, supra.*

This does not mean that during an investigatory stop an officer cannot ask questions beyond the initial ones concerning identity and an explanation of the suspicious circumstances. The answers to these initial questions may give rise to other suspicious circumstances that require further explanation. Eventually, the questioning may lead to probable cause for the individual's arrest as in *State v. Sinclair,* 11 Wn. App. 523, 523 P.2d 1209 (1974). At that point, the *Miranda* warnings must be given.

Here, the State conceded both in the trial court and in this court that the officers did not have probable cause to arrest Mr. Sykes at the time they stopped his vehicle. Instead, it contends the officers were engaged in an investigative stop. I have no quarrel with the propriety of the officers' stop; surely, the information given by the informant, corroborated by the conduct of Mr. Sykes, justified the stop. The error arises from the manner in which the investigation was conducted.

Immediately after the officers stopped the vehicle, they gave Mr. Sykes *Miranda* warnings and proceeded to elicit answers to questions which required Mr. Sykes to either admit or deny his guilt. They never inquired as to his identity, or asked him why he was on the school grounds, or what was in the green box. Rather, after first giving Mr. Sykes the *Miranda* warnings, they immediately asked him if he possessed the marijuana. When they obtained that admission, the officers secured Mr. Sykes' permission to search the vehicle. The trial court found Mr. Sykes had been arrested without probable cause, rejected the investigatory stop theory and suppressed the evidence. In doing so, the trial court, in my opinion, was correct.

The majority in its opinion engages in "bootstrapping." They allow the police to make an investigatory stop based upon certain suspicions that the State agrees do not give rise to probable cause for an arrest. Then, they proceed to

use those very same suspicions to justify going beyond the accepted bounds of questioning permitted by an investigatory stop. The police did not use the investigatory stop to obtain information which caused them to become more suspicious; rather, they utilized the investigatory stop as a pretext for asking incriminating questions that would only be allowed following an arrest. The logical inconsistency of this position is seen in that the police obtain all the benefits of custodial arrest—the power of authority, the fear of incarceration, and the whole panoply of psychological persuasion which is inherent in what amounts to a custodial arrest, without meeting any of the prerequisites.

In my opinion, the police must either arrest a suspect, that action to be reviewed by the standards of probable cause applicable in such situations,[3] or they must strictly limit the scope of the investigatory stop to that allowed under *State v. Gluck, supra;* and *State v. Moreno, supra.* That the scope of investigation permitted upon an investigatory stop is limited was reaffirmed in *State v. Thompson,* 93 Wn.2d 838, 613 P.2d 525 (1980); and *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980).

Further, the majority seems to indicate that the giving of *Miranda* warnings renders Mr. Sykes' confession of guilt admissible and his consent to the search of his car renders the marijuana admissible. I disagree.

When the police exceeded the bounds of an investigatory stop and without probable cause arrested Mr. Sykes, his admission and consent to the search were tainted and inadmissible. Analogously, the court addressed this question in *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975). In *Brown,* the defendant was arrested at

---

[3]The officer must have probable cause to believe that a crime has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed." *State v. Gluck, supra* at 426–27.

his home without probable cause and under circumstances that indicated the arrest was for the purpose of questioning the defendant about a murder. There, the police officers gave defendant his *Miranda* warnings, then immediately took him to the station house where, after questioning, he confessed to the murder. The court, 422 U.S. at 591–92, 95 S. Ct. at 2256, framed the issue as:

> [W]hether the statements were to be excluded as the fruit of the illegal arrest, or were admissible because the giving of the *Miranda* warnings sufficiently attenuated the taint of the arrest. *See Wong Sun v. United States,* 371 U. S. 471 [9 L. Ed. 2d 441, 83 S. Ct. 407] (1963).

The *Brown* court examined the rationale of the *Wong Sun* decision, which held that a defendant's statements made after his illegal arrest were inadmissible because the statements were not "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Wong Sun v. United States,* 371 U.S. 471, 486, 9 L. Ed. 2d 441, 83 S. Ct. 407, 416–17 (1963). That is, the evidence was arrived at by exploitation of the initial illegality instead of by means sufficiently distinguishable to break the causal chain between the illegal arrest and the subsequent obtaining of evidence. According to *Brown, Wong Sun* mandates consideration of whether evidence which is apparently freely given is admissible in light of the distinct policies and interests of the Fourth Amendment. *Brown v. Illinois, supra* at 602.

The *Brown* court held that *Miranda* warnings, by themselves, could not attenuate the taint of illegal arrest. Otherwise, the court reasoned, the State could avoid the exclusionary effect of a violation of the Fourth Amendment by simply giving the defendant his rights. The rationale of this conclusion was expressed at pages 602–03:

> If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See *Davis v. Mississippi,* 394 U. S. 721, 726–727 [22 L. Ed. 2d 676, 89 S. Ct. 1394, 1397]

(1969). Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cure–all," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words." See *Mapp v. Ohio,* 367 U. S. at 648 [6 L. Ed. 2d 1081, 81 S. Ct. 1684, 1687 (1961)].

(Footnotes omitted.) The question of whether the facts are sufficient to remove the taint of the illegal arrest must be answered by the facts of each case. The temporal proximity of the arrest, admission and search, the presence of intervening circumstances, and the purpose and flagrancy of the police conduct are relevant in making this determination. *Brown v. Illinois, supra* at 603. The burden of proving that the evidence was not tainted by the illegal arrest is upon the State. *See also Morgan v. Estelle,* 588 F.2d 934 (5th Cir. 1979); *United States v. Popejoy,* 578 F.2d 1346 (10th Cir. 1978); *United States v. Barber,* 557 F.2d 628 (8th Cir. 1977).

Here, the State concedes that the officers did not have probable cause to arrest Mr. Sykes. The questions asked by the officers went beyond the scope of questions allowed in an investigatory stop. The trial court properly held the officers made an illegal arrest. Mr. Sykes' admission and consent to search his automobile were obtained almost immediately after the stop. In these circumstances, I would hold that the admission and consent to search were obtained as a direct result of the illegal arrest, instead of by means sufficiently distinguishable to break the chain between the illegal arrest and the subsequent search under the Fourth Amendment.[4]

---

[4]The majority refers to *State v. Shoemaker,* 85 Wn.2d 207, 533 P.2d 123 (1975), decided prior to *Brown v. Illinois, supra. Shoemaker* was not cited or relied upon in the trial court nor in this court by either party. The trial court may

For the foregoing reasons I would affirm the trial court's order of suppression and for that reason dissent from the majority opinion.

be affirmed on any theory on appeal, but it may not be reversed on a theory not first presented to it.