FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 40

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42939-0-II |
| Appellant, | |
| v. | |
| RONNIE JOHN MULLALLY, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, A.C.J. — Ronnie John Mullally appeals his jury trial convictions for second degree robbery and third degree assault and various aspects of his sentence. He argues that (1) the trial court erred in refusing to instruct the jury on the lesser included offense of attempted second degree robbery, (2) one of the jury instructions was a judicial comment on the evidence, and (3) his legal financial obligations (LFOs) are improper on several grounds. In his statement of additional grounds[1] (SAG), he contends that (1) the 63-month sentence for third degree assault exceeds the five-year statutory maximum for the offense, (2) his convictions for both robbery and assault violate double jeopardy, (3) he received ineffective assistance of counsel on several grounds, and (4) the robbery conviction is not supported by sufficient evidence. We affirm the convictions, but remand for resentencing.

---

[1] RAP 10.10.

## FACTS

### I. Background

On April 5, 2011, Target Store loss prevention investigator Seth Aaron Kelton observed Ronnie John Mullally select several items,[2] place them in his hand basket, and then walk toward the front doors. Suspecting that Mullally was going "to do a grab and run," Kelton followed Mullally and positioned himself outside the store. 1 Verbatim Report of Proceedings (VRP) at 99.

When Mullally exited the store without paying for the items in his basket, Kelton approached him and identified himself as Target security. Mullally did not respond and attempted to walk past Kelton. Kelton again identified himself as security and told Mullally to "get against the wall." 1 VRP at 138, 141. Kelton briefly pushed Mullally, trying to get him up against the wall, but Mullally "push[ed] off the wall," forced himself past Kelton, and continued to try to walk past Kelton. 1 VRP at 101, 103. Kelton attempted to knock the hand basket out of Mullally's hands; Kelton succeeded on the third try. After dropping the basket, Mullally hit Kelton in the right shoulder. Mullally then drew back his arm as if he was going to try to hit Kelton again, and Kelton backed away. Mullally ran 30 or 40 feet into the parking lot where he was picked up by a waiting car; the car sped away. The State charged Mullally with second degree robbery and third degree assault.

---

[2] Kelton later testified that these items were valued at approximately $540.

## II. Procedure

### A. Trial

At trial, Kelton testified as described above.[3] The State also showed the jury a security video of the entire incident.

The State proposed a lesser included offense instruction on attempted second degree robbery. After discussing the instruction at length, the trial court found that it was not factually supported. After the trial court made its decision, defense counsel responded, "I agree with you." 2 VRP at 237.

The trial court gave the jury the following instruction, jury instruction 13:

> A merchant, or employee of a merchant, has a lawful right to apprehend or detain a person they have probable cause to believe has committed theft.

Clerk's Papers (CP) at 32. Mullally objected to this instruction, arguing that the instruction was not appropriate because the trial court had not allowed Mullally's self-defense instruction. Mullally did not argue that the instruction was an incorrect statement of the law or that it was a judicial comment on the evidence. The jury convicted Mullally of second degree robbery and third degree assault.

### B. Sentencing

The trial court sentenced Mullally to 63 months on each count. In the judgment and

---

[3] The State's only other witness was the driver of the car that picked up Mullally and drove away. This witness testified that he had driven Mullally to the store to run "errands." 1 VRP at 164. Mullally did not present any witnesses.

3

sentence, the trial court also imposed $4,150 in LFOs. These fees included: (1) a $500 victim assessment fee; (2) $450 in court costs (a $200 filing fee and a $250 jury demand fee), (3) a $1,000 court appointed attorney fee, (4) a $1,200 "[t]rial per diem," (5) $400 for court appointed defense expert and other defense costs, (6) a $500 fine under RCW 9A.20.021, and (7) a $100 DNA collection fee. CP at 43-44.

At the sentencing hearing, the only mention of LFOs occurred when a "Ms. Clark"[4] advised the trial court, "There's a trial per diem here indicating $1,200. I get paid a day-and-a-half for what happened in this case." 2 VRP at 316-17. The trial court did not orally address any other LFO or Mullally's ability to pay on the record, and Mullally did not object to any LFOs. Additionally, on the judgment and sentence, the trial court did not check the box indicating that it had considered Mullally's ability or likely future ability to pay his LFOs. Mullally appeals his convictions and his sentence.

## ANALYSIS

### I. ATTEMPTED SECOND DEGREE ROBBERY INSTRUCTION

Mullally first argues that the trial court erred when it refused to instruct the jury on the lesser included offense of attempted second degree robbery. This argument fails.

The record shows that the State originally proposed a lesser included offense instruction on attempted second degree robbery. The trial court refused to give this instruction, and

---

[4] The record does not identify who Ms. Clark is or what a "trial per diem" is. Nor do the parties clarify this in their briefs.

No. 42939-0-II

Mullally's counsel expressly agreed that the trial court's decision was correct. Thus, under the invited error doctrine, Mullally has waived this issue and we do not consider it further. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996) (the invited error doctrine prohibits "'setting up an error at trial and then complaining of it on appeal'") (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 321, 893 P.2d 629 (1995)); *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995) (courts "will deem an error waived if the party asserting such error materially contributed thereto.").

## II. NO JUDICIAL COMMENT ON THE EVIDENCE

Mullally next argues that jury instruction 13 was a judicial comment on the evidence.[5] Mullally did not object to jury instruction 13 on this ground at trial. Accordingly, we must first determine whether this is a manifest constitutional error that he can raise for the first time on appeal. RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). We conclude that it is not and that Mullally has failed to preserve this issue for appellate review.

A judicial comment on the evidence has constitutional implications, so our first inquiry is whether the trial court in fact commented on the evidence. *See* WASH. CONST. art. IV, § 16. We hold that it did not. Trial judges are prohibited from commenting upon the evidence presented at

---

[5] Mullally also argues that this instruction was irrelevant. But a person commits third degree assault if he assaults another with intent to prevent or resist *lawful* apprehension or detention, thus this instruction was clearly relevant to the third degree assault charge. RCW 9A.36.031(1)(a).

No. 42939-0-II

trial. WASH. CONST. art. IV, § 16; *State v. Deal*, 128 Wn.2d 693, 703, 911 P.2d 996 (1996). "An impermissible comment is one [that] conveys to the jury a judge's personal attitudes toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed the testimony in question." *State v. Swan*, 114 Wn.2d 613, 657, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991). A jury instruction that does no more than accurately state the law pertaining to an issue does not constitute an impermissible comment on the evidence by the trial judge. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046, *cert. denied*, 534 U.S. 964 (2001).

Jury instruction 13 stated:

> A merchant, or employee of a merchant, has a lawful right to apprehend or detain a person they have probable cause to believe has committed theft.

CP at 32. This instruction is a correct statement of the law. *State v. Miller*, 103 Wn.2d 792, 698 P.2d 554 (1985) (store personnel may detain a suspected shoplifter if they have reasonable grounds to believe the person is committing or attempting to commit theft or shoplifting).[6]

Mullally also argues that this instruction "removed a disputed issue from the jury's consideration by in essence informing the jury that Kelton's actions were lawful." Br. of Appellant at 15. But the instruction merely established that Kelton had the legal authority to detain Mullally *if* he (Kelton) had probable cause to believe Mullally had committed theft; whether the State had proven probable cause was left to the jury.

---

[6] Mullally does not argue that the instruction's use of the probable cause standard rather than the reasonable grounds standard established in *Miller* was error.

6

Because the instruction was a correct statement of the law and the instruction did not convey the trial court's personal attitudes towards this case, Mullally fails to show that the instruction was an impermissible comment. Having failed to show any error, Mullally also fails to establish a manifest constitutional error, and he cannot raise this issue for the first time on appeal.

### III. LEGAL FINANCIAL OBLIGATIONS

Mullally next argues that (1) the trial court failed to make any findings about his current or future ability to pay LFOs and there is no evidence that the trial court considered his ability to pay before ordering the LFOs, (2) the "trial per diem fee" was not statutorily authorized (quoting CP at 43), and (3) the State failed to present any evidence supporting several of the LFOs. Because the State has not yet sought to enforce the LFOs, Mullally is not an aggrieved party and this issue is not yet ripe. RAP 3.1; *State v. Hathaway*, 161 Wn. App. 634, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011); *see also State v. Lundy*, No. 42886-5-II, 2013 WL 4104978 at *5 (Wash. Ct. App. Aug. 13, 2013). Furthermore, Mullally did not object at his sentencing hearing to the imposition of these costs.[7] RAP 2.5(a).

Here, the record shows Mullally had previously been employed, and there was no indication that Mullally would necessarily be unemployable in the future; additionally, the judgment and sentence did not state that Mullally had to start payments at any time. Thus,

---

[7]We note that although we addressed a trial court's finding of current or future ability to pay in *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 (2012), despite Bertrand's failure to object as required by RAP 2.5(a), "that rule does not compel us to do so in every case." *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *petition for review filed*, No. 89028-5 (Wash. July 8, 2013).

Mullally has not shown that RAP 2.5(a) or RAP 3.1 should not apply here.[8] Accordingly, his LFO challenges are not properly before us.

As to Mullally's argument that the record does not support the imposed LFOs, because we remand for resentencing on the third degree assault conviction and Mullally did not object to these LFOs below, the State may want to make a more complete record regarding Mullally's ability to pay and present any relevant evidence to support the amount of the LFOs. For example, it is not clear from the record what costs the "trial per diem fee" represents and therefore we cannot determine whether that fee is statutorily authorized. *See State v. Thiefault*, 160 Wn.2d 409, 417 n.4, 158 P.3d 580 (2007) (remand with an opportunity for the State to prove classification of an offense at a sentencing hearing is appropriate when the defendant failed to object or otherwise put the State on notice as to any potential defects).

## IV. SAG

### A. Third Degree Assault Sentence Exceeds Statutory Maximum

In his pro se SAG, Mullally next contends that his 63-month sentence on his third degree assault conviction exceeds the statutory maximum for the offense. He is correct.

Third degree assault is a class C felony. RCW 9A.36.031(2). The statutory maximum for a class C felony is 60 months. RCW 9A.20.021(1)(c). Thus, the trial court erred when it imposed a 63-month sentence on the third degree assault conviction. Accordingly, we vacate this sentence and remand for resentencing.

---

[8] We acknowledge that Division One of this court has addressed objections to LFOs differently in *State v. Calvin*, ___ Wn. App. ___, 302 P.3d 509 (2013). We decline to follow *Calvin*. Not only is our current case law on this issue contrary to *Calvin*, but unlike in *Calvin*, the trial court did not enter any finding regarding Mullally's ability to pay for us to consider.

## B. No Double Jeopardy

Mullally further contends that his second degree robbery and third degree assault convictions violate double jeopardy under the merger doctrine because the robbery was based on the assault. Mullally is incorrect.

We review double jeopardy claims de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). Under the merger doctrine, when separate criminal conduct raises another offense to a higher degree, the court presumes that the legislature intended to punish both offenses only once. *Freeman*, 153 Wn.2d 765, 772-73. Here, the assault did not elevate the robbery to a higher degree, so the merger doctrine does not apply.

Furthermore, a defendant may commit robbery without committing an assault, but this requires that the State prove a separate act of force to prevent double jeopardy from precluding two convictions. *State v. Smith*, 9 Wn. App. 279, 511 P.2d 1032 (1973), *review denied*, 82 Wn.2d 1013 (1973). Here, the act of force necessary to commit the robbery was Mullally's pushing past Kelton and resisting Kelton's attempts to knock the hand basket out of his hand. The later acts of force, Mullally's punching Kelton in the shoulder, and Mullally drawing back his arm as if he was going to try to hit Kelton again, causing Kelton to back away, occurred after Mullally dropped the merchandise and was to ensure Mullally's escape, not to facilitate the robbery. Thus the third degree assault had an independent purpose, and the two convictions do not violate double jeopardy. *Freeman*, 153 Wn.2d at 778-79 (citing *State v. Prater*, 30 Wn. App. 512, 516, 635 P.2d 1104 (1981) (when the defendant struck the victim after completing a

robbery, there was a separate injury and intent justifying a separate assault conviction, especially when the assault did not further the robbery), *review denied*, 97 Wn.2d 1007 (1982)).

### C. Ineffective Assistance of Counsel

Mullally next contends that he received ineffective assistance of counsel on several grounds. Again, we disagree.

To establish ineffective assistance of counsel, Mullally must show that (1) counsel's performance was objectively unreasonable; and (2) the deficient performance prejudiced the defense. *State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied*, 479 U.S. 922 (1986) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Mullally bears the burden of proving both parts, and failure to establish either part defeats the ineffective assistance of counsel claim. *Jeffries*, 105 Wn.2d at 418 (citing *Strickland*, 466 U.S. at 687).

Furthermore:

> The threshold for the deficient performance prong is high, given the deference afforded to defense counsel's decisions in the course of representation. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) *adhered to in part on remand*, 168 Wn. App. 635, 278 P.3d 225 (2012). To prevail on an ineffective assistance claim, a defendant alleging ineffective assistance must overcome a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33, 246 P.3d 1260. Also, counsel's performance is not deficient when her or his conduct can be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

*State v. Embry*, 171 Wn. App. 714, 761, 287 P.3d 648 (2012), *review denied*, 177 Wn.2d 1005 (2013).

10

Mullally first asserts that his counsel was ineffective for failing to obtain an expert to examine the security videos and, apparently, to lip read to determine what Kelton was saying.[9] But there is nothing in the record supporting Mullally's assertion that Kelton failed to identify himself, accordingly Mullally cannot show prejudice based on this record.

Mullally next asserts that his counsel should have proposed a lesser included offense instruction on third degree theft. But, "[c]ounsel's decision to not request an instruction on a lesser-included offense does not constitute ineffective assistance of counsel if it can be characterized as part of a legitimate trial strategy to obtain an acquittal." *Embry*, 171 Wn. App. at 761 (citing *State v. Hassan*, 151 Wn. App. 209, 218, 211 P.3d 441 (2009)). Here, "[a]lthough risky, an all or nothing approach" on the more serious offense, "was at least conceivably a legitimate trial strategy." *Grier*, 171 Wn.2d at 42. Thus, Mullally does not establish ineffective assistance of counsel on this ground.

Finally, Mullally argues that his counsel was ineffective in failing to propose any jury instructions. But defense counsel proposed some instructions. Furthermore, other than his reference to the third degree assault instruction, which we address above, Mullally fails to identify any specific instruction counsel should have proposed. Without knowing what instructions Mullally believes his counsel should have proposed we cannot determine whether Mullally was prejudiced. Accordingly, Mullally's ineffective assistance of counsel claims fail.

---

[9] During the trial, Mullally moved to dismiss defense counsel, arguing that, among other things, that although he had asked counsel to "enhance[]" the video, counsel had failed to do so. 2 VRP at 212. Mullally also suggested that counsel should have found someone to testify about what Kelton had said on the video.

## D. Sufficiency

Finally, Mullally argues that the evidence is insufficient to support the second degree robbery conviction because there is no evidence that he used force to obtain or retain possession of the property or prevent or overcome resistance and because he "relinquished the property then took off." SAG. Once again, we disagree.

We review insufficient evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Yarbrough*, 151 Wn. App. 66, 96, 210 P.3d 1029 (2009). Sufficiency challenges admit the truth of the State's evidence and all reasonable inferences drawn from it. *Yarbrough*, 151 Wn. App. at 96. In determining the sufficiency of the evidence, we do not consider circumstantial evidence any less reliable than direct evidence. *Yarbrough*, 151 Wn. App. at 96.

To prove second degree robbery, the State had to prove beyond a reasonable doubt that Mullally used or threatened the use of force, violence, or fear of injury and that that force or fear was used to obtain or retain possession of the property or to prevent or overcome resistance to the taking; "the degree of force is immaterial." RCW 9A.56.190, .210. Kelton's testimony, taken in the light most favorable to the State, was sufficient to allow the jury to find that Mullally pushed past Kelton and held onto the hand basket despite Kelton's attempts to knock it out of his hand. Because the degree of force is immaterial, this evidence is sufficient to support this element and Mullally's insufficient evidence argument fails.

No. 42939-0-II

We affirm the convictions but vacate the third degree assault sentence and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Quinn-Brintnall, J.

_____
Forbes, J.P.T.

13